No. 44,622

Ruth Bogle and Rex Bogle, *Appellees* v. Donald G. Conway and Henry E. Fisher, *Appellants*.

(422 P. 2d 971)

January 21, 1967.             Opinion filed

*Harry A. Waite*, of Dodge City, argued the cause, and *E. C. Minner*, also of Dodge City, was with him on the brief for the appellants.

*Chas. E. Vance*, of Liberal, argued the cause, and *H. Hobble, Jr., Chester A. Nordling*, and *Gene H. Sharp*, all of Liberal, were with him on the brief for the appellees.

The opinion of the court was delivered by

Schroeder, J.: This is an action brought by the parents of a minor, Gary Bogle, to recover damages for the wrongful death of the minor. Death came to Bogle as the result of injuries he sustained in an accident while riding as a passenger in one of two automobiles approaching the crest of a hill side by side at high speed when they met another automobile approaching from the other side.

The basic question presented on appeal is whether the evidence supports the findings of the trial court.

Donald G. Conway and Henry E. Fisher (defendants-appellants) are both minors and were the drivers of the two automobiles which engaged in a drag race. The parents of Bogle were forced of necessity to prove their cause of action by the testimony of the defendants. They called the defendants to testify at the trial, and they

also used their deposition testimony. Based upon their testimony the essential facts of the case may be stated as follows:

On Sunday, the 29th day of September, 1963, Gary Bogle, Donald G. Conway and Henry E. Fisher were all residents of Meade, Kansas. Shortly before 1:15 p. m. Conway was driving his Chevrolet automobile in Meade, and as he stopped for a stop light Bogle, who had been sitting in front of the snooker hall, started walking toward the Conway automobile in such a way that Conway thought Bogle wanted to say something to him. Conway turned the corner, stopped and Bogle got into the automobile with him. They met some other boys and decided to go to the football field and play touch football. Conway and Bogle then drove to a Mobil Service Station where Conway worked. They went there to use the telephone to call more boys to play football. Both boys went into the station where Conway used the telephone. While Conway was using the telephone, Fisher drove up to the station in his Pontiac automobile. Fisher alighted from his vehicle and met Conway and Bogle in the station. Fisher proposed a race. Conway declined at first, but according to the testimony of Conway, Bogle worked on him, and Conway finally agreed to race. Before they entered their automobiles, Conway asked Bogle if he wanted to go along. Bogle said he did, and got into Conway's automobile. Conway put some gasoline in his automobile and then followed Fisher to a point on the highway about a mile north of Meade where they both stopped. Conway took the left lane and Fisher the right. The race started from a standing start, but Conway's automobile accelerated faster than Fisher's. When Conway and Bogle were sufficiently ahead of Fisher, Conway pulled his automobile into the right-hand lane ahead of Fisher. They proceeded north on the highway at a high rate of speed, Fisher admitting that they had reach a speed of 120 m. p. h., according to his speedometer, after which they slowed down. Conway also admitted a speed of 120 m. p. h. and decided he had gone far enough. He then let off of the gas pedal and slowed down.

Fisher then pulled into the left lane and started to pass Conway on the incline of a hill. At that time the automobiles were side by side and traveling at a speed of 80 or 90 m. p. h. Another automobile approached from the north coming up the other side of the hill. Fisher upon seeing the approaching vehicle attempted to slow down and pull behind Conway and Bogle. As Fisher tried to pull behind the Conway Chevrolet, the front bumper of his Pontiac locked with

the rear bumper of the Chevrolet, throwing the Chevrolet out of control and off the highway. Bogle was thrown from the Chevrolet sustaining injuries which resulted in his death the following Tuesday.

Upon the evidence presented in the case the trial court made written findings as follows:

"1. The Court finds that Gary Bogle died on October 1, 1963, as the result of injuries sustained in a two-car automobile accident which occurred in Meade County on September 29, 1963, while a passenger in the vehicle driven by defendant, Donald G. Conway.

"2. Such accident was proximately caused by the gross and wanton negligence of the defendant, Fisher, in trying to pass the defendant, Conway, at a speed in excess of 80 miles an hour as the cars driven by the two defendants approached the crest of a hill, and the gross and wanton negligence of the defendant, Conway, in driving his automobile at a speed in excess of 80 miles an hour and failing to reduce his speed as the cars approached the crest of the hill in a marked no-passing zone when both drivers knew that an accident would undoubtedly ensue if there was a car appproaching on the other side of the hill and continued on their own way in complete disregard of the consequences.

"3. The plaintiff, Ruth Bogle, now Ruth Weaver, was the mother and had custody of Gary Bogle, and during the lifetime of Gary Bogle necessarily incurred expense for medical and hospital treatment of the injuries that he received in such accident in the amount of $493.99.

"4. Plaintiffs were the parents of the decedent, Gary Bogle, and plaintiff, Ruth Bogle, suffered damage by reason of his wrongful death in an amount in excess of $25,000.00."

The journal entry discloses that both parties proceeded to trial without a jury, no demand for a jury having been filed. Accordingly, judgment was entered in favor of the plaintiffs for the sum of $25,000 and costs, and Ruth Bogle, the mother of the deceased minor, was given judgment against the defendants for the sum of $493.99. The defendants' motion to alter the judgment and their motion for a new trial, after argument to the court, were both overruled.

The appellants contend the trial court erred in refusing to find that Bogle was an active and willing participant in an automobile race which caused his death. They argue the fact of the race and the fact of Bogle's desire to participate are established by the plaintiffs' evidence, and that there is nothing in any of the evidence to the contrary.

The appellants argue whether voluntary participation in racing on a public highway be called "assumption of risk" or "voluntary

assumption of risk" or "consent to the injury" or any other name, the fact remains that the willing participant is guilty of the same conduct which he seeks to use as a basis for imposing legal liability on the other participants, and if the conduct of the others in the race may be called wanton, so may the conduct of the guest racer.

It must be conceded that contributory negligence is not a defense to a defendant's willful or wanton conduct, but willful or wanton conduct of a plaintiff is a defense to the defendant's wantonness. (*Kniffen v. Hercules Powder Co.,* 164 Kan. 196, 188 P. 2d 980, Syl. ¶ 4.)

This court has recently held that assumption of risk is no defense to an action arising under the guest statute. In *Perry v. Schmitt,* 184 Kan. 758, 339 P. 2d 36, the court said:

". . . The defense of assumption of risk is generally confined to master and servant situations. We have never applied that doctrine as a defense to an action arising under the guest statute and we are not disposed to do so now. . . ." (p. 762.)

In that case the plaintiff, a minor, bought a half pint bottle of whiskey, from which both plaintiff and defendant had two drinks on the way to Liberal. There they met some friends and drank "two or three beers." They then drove around town until about 11:00 p. m. when they started back to Hugoton. The plaintiff went to sleep after they left Liberal and the next thing he remembered was waking up in the Amarillo Air Force Base Hospital. The jury found that the liquor and beer consumed by the defendant contributed to the accident in which the plaintiff was injured; that the defendant was driving between 80 and 85 m. p. h.; and that high speed was the proximate cause of the accident which injured the plaintiff. It also found the plaintiff knew how much liquor and beer the defendant had consumed when he went to sleep. On appeal this court sustained a finding by the jury that the defendant was guilty of gross and wanton negligence. In approving an instruction that plaintiff's right to recover for gross and wanton negligence was not barred by the failure of the plaintiff to exercise ordinary care for his own safety, the court said entering an automobile with only the knowledge that the driver had been drinking does not, as a matter of law, preclude recovery by a guest for injuries arising from the gross and wanton negligence of the driver.

In the instant case the only evidence that Bogle consented to the race is the direct testimony of Conway.

In the direct testimony of Conway at the trial he said that when Fisher asked him if he wanted to race he said, "no." He then testified:

". . . And Gary [Bogle] said, 'Aw, come on.' They was kind of working on me, trying to get me to say yes. So I finally said 'Oh, I guess so.'

"Q. What did Bogle say to you, if you remember?

"A. When Fisher asked me if I wanted to race, I said no, and Gary said, 'Aw, come on. Race him.'

"Q. Is that all he said?

"A. Yes."

When Conway was cross examined concerning Bogle's willingness to participate in the race, counsel referred to the deposition testimony of Conway in which he said in substance that Bogle had not said anything favorable to the race prior thereto while the boys were at the Mobil Service Station. A careful study of the deposition testimony of Conway discloses that at no place did he say Bogle worked on him urging that Conway agree to the race.

Nowhere in the deposition testimony of Fisher is there anything said about Bogle consenting to the race or any attempt by Bogle to urge Conway into the race. The direct testimony of Fisher at the trial was simply that Conway answered in the negative when Fisher asked him to race. He testified that Bogle then said "something" to Conway, after which Conway agreed to race.

It is the position of the appellants the plaintiffs established by their own evidence that Bogle consented to the race.

Technically, the testimony of Conway was a part of the plaintiffs' evidence, but no one is ever bound by the testimony of an adverse party. (*Gorman v. Hickey,* 145 Kan. 54, 65, 64 P. 2d 587.)

In view of all of the testimony given by Fisher and Conway in this case, including their deposition testimony which was at variance with their direct testimony at the trial, the trial court was not bound to give the testimony of Fisher and Conway more credence than the court thought it deserved. It is presumed that a deceased person used due care for his own safety, and the burden of proving otherwise is upon the adverse party.

Even assuming the court believed the testimony of Conway, there is no evidence that Bogle consented to anything as suicidal as what actually occurred. The appellants used the expression "drag race," which is a test of acceleration usually run on a level quarter or half mile strip. Assuming that Bogle consented to such a race, he would not be consenting to more than the drag race itself, and it was over

before the accident occurred. The testimony was that the drivers started a little over a mile north of Meade, and the accident was five miles north of Meade, after both automobiles and slowed down to about 80 or 90 m. p. h. Reprehensible as drag racing may be, even on level ground during daylight hours, there are many places in Western Kansas where the visibility is such that it would involve a minimum of risk. But driving side by side at 80 or 90 m. p. h., approaching the crest of a hill on a two-lane highway is suicidal. The one who was passing could have no excuse for doing so on a hill, and the one who was being passed could have no excuse for driving at such a high speed while being passed on a hill. Here either could have avoided an accident if he had not chosen to take the chance of killing someone in the event they met an automobile approaching from the other side of the hill. Both drivers elected to take the chance. The fact that the driver on the left elected to try to return to his side of the road, instead of hitting the approaching automobile head on, does not change the fact that both drivers deliberately took the chance. Liability in such situation arises not from negligence after the emergency arises, but rather from conduct calculated to create the emergency.

The appellants urge upon this court the adoption of a rule to the effect that one who consents to ride in an automobile which he knows is about to be used for drag racing on a highway, who is fully cognizant of the hazard, and who makes no effort to get out of the automobile, or express disapproval, assumes the risk so as to preclude recovery for injuries sustained during the race. Decisions from other jurisdictions upon which the appellants rely supporting this rule are: *Bugh v. Webb*, 231 Ark. 27, 328 S. W. 2d 379, 84 A. L. R. 2d 444 (1959); *Lessen v. Allison*, 25 Ill. App. 2d 395, 166 N. E. 2d 806 (1960); *Bordelon v. Couvillion*, 130 So. 2d 453 (La. App. 1961); *Giemza v. Allied American Mut. Fire Ins. Co.*, 10 Wis. 2d 555, 103 N. W. 2d 538 (1960); and *Roberts v. King*, 102 Ga. App. 518, 116 S. E. 2d 885 (1960).

These cases are based primarily upon the doctrine of assumed risk.

On the record here presented we are not called upon to consider the rule urged by the appellants, commendable as it may seem. It must be assumed from the findings of the trial court, and in particular finding No. 2, that the drag race was over before the accident occurred. Here the appellees prevailed in the trial court and they

are entitled to all inferences from the evidence favorable to them which support, or tend to support, the findings of the trial court. Inherent in the findings and judgment of the trial court is a finding that the conduct of Bogle was not sufficiently culpable to constitute gross and wanton negligence. On the record here presented we cannot say the trial court erred in failing to find Bogle guilty of gross and wanton negligence.

The appellants contend the trial court's findings are contrary to the evidence, and that the trial court failed to apply the guest statute. The appellants first argue that the evidence does not disclose gross and wanton misconduct on the part of the drivers, and second, that if it does Bogle was likewise guilty of gross and wanton misconduct and precluded from recovery under the principle announced in *Kniffen v. Hercules Powder Co.*, supra. The second argument has already been answered.

The appellants' argument proceeds upon the assumption that racing on a public highway is not invariably gross and wanton negligence. They argue Fisher was guilty of trying to pass Conway at a speed in excess of 80 m. p. h. as the automobiles approached the crest of a hill; that trying to pass at 80 m. p. h. in and of itself is not wanton negligence. (Citing, *Tuminello v. Lawson*, 186 Kan. 721, 352 P. 2d 1057.) They argue that the collision was with Conway, not the approaching automobile, which Fisher saw; that Fisher's negligence was in not keeping his automobile under control as he attempted to pull back behind Conway; that Fisher miscalculated the clearance he had with which to pull behind Conway, which amounts to nothing more than simple negligence. They argue that the trial court found Conway drove in excess of 80 m. p. h. as he approached the crest of a hill in a no-passing zone; that he was in his proper lane; and that this amounts only to a finding of excessive speed.

We think the evidence in the record is ample to support the finding of the trial court that both drivers were guilty of gross and wanton negligence. On the whole record it cannot be said the trial court erred in its application of the guest statute.

The judgment of the lower court is affirmed.