No. 44,834

RUTH BOGLE and REX BOGLE, *Appellees,* v. DONALD G. CONWAY and HENRY E. FISHER, *Appellees,* and FARM BUREAU MUTUAL INSURANCE COMPANY, a corporation, *Appellant.*

(433 P. 2d 407)

Opinion filed November 13, 1967.

*J. Eugene Balloun,* of Great Bend, argued the cause, and *H. Lee Turner, Max E. Eberhart,* and *Jack G. Duncan,* all of Great Bend, and *E. C. Minner* and *Harry A. Waite,* both of Dodge City, were with him on the brief for the appellant.

*Charles E. Vance,* of Liberal, argued the cause, and *H. Hobble, Jr., Rex A. Neubauer, Chester A. Nordling, Gene H. Sharp,* and *Kerry E. McQueen,* all of Liberal, were with him on the brief for the appellees, Ruth Bogle and Rex Bogle.

*David J. Wilson,* and *E. Keith Beard,* both of Meade, were on the brief for the appellees, Donald G. Conway and Henry E. Fisher.

The opinion of the court was delivered by

HARMAN, C.: This is a garnishment proceeding against the liability insurer of two automobile drivers against whom a judgment in a wrongful death action had been obtained.

The fatal incident occurred near Meade, Kansas, September 29, 1963. The automobiles were driven by Donald G. Conway and Henry E. Fisher, two of the appellees herein. Gary Bogle was

a passenger in Conway's vehicle, and was killed as a result of the two automobiles colliding. Details of the incident are reported at *Bogle v. Conway*, 198 Kan. 166, 422 P. 2d 971.

The appellant, Farm Bureau Mutual Insurance Company, carried liability insurance on both the Conway and Fisher vehicles. The day following the collision a claims adjuster, on behalf of appellant, talked to both Conway and Fisher and their fathers about the possibility of a policy violation based on a racing exclusion in the policy. At that time the adjuster secured the signature of Conway to the following instrument, and also Fisher's signature to a similar one:

"Notice and Acknowledgment of Non-Waiver of Rights

"It is hereby understood and acknowledged by and between the FARM BUREAU MUTUAL INSURANCE CO., INC., of Manhattan, Kansas and Gene Conway and Phill Conway that any action taken by the said Insurance Company in investigating and/or attempting to adjust, and/or defending any claim, and/or handling any litigation growing out of an accident involving: Gene Conway and H. Eugene Fisher which occurred on or about September 29, 1963 at 5 miles North of Meade, Kansas on Highway 23 shall not be construed as a waiver of the right of the said Insurance Company to deny liability at any time under any policy or policies of insurance issued to Gene and/or Phill Conway. Nor shall the acknowledgment of this notice be considered a waiver of the rights, under said policy or policies, of the said Gene Conway and Phill Conway. Dated at Meade District Hospital this 30th day of September, 1963.

"Farm Bureau Mutual Insurance<br>Company, Inc.

"WITNESSED:

"_____ By _____ (SEAL)'

"_____ Acknowledged by

"/s/ Gene Conway (SEAL)<br>/s/ Phill Conway (SEAL)"

Thereafter appellees Ruth Bogle and Rex Bogle, parents of Gary Bogle, filed a wrongful death action against Conway and Fisher, which action was defended throughout by attorneys retained by appellant. A jury was waived and the action eventually proceeded to trial by the court June 14, 1965, as a result of which judgment was rendered against Conway and Fisher for $25,493.99. Post-trial motions were denied and on December 15, 1965, a notice of appeal to this court by Conway and Fisher was served. No supersedeas bond in connection with the appeal was furnished. The judgment not having been paid, on February 8, 1966, an order of garnishment was issued and served upon appellant as garnishee.

Appellant filed its answer in the garnishment proceeding. It

admitted that its policies to Conway and Fisher were in effect at the time of the collision and it further alleged:

"2. That upon receipt of notice that an accident had occurred and initially determining the possibility that coverage of said policies of insurance did not apply as hereinafter disclosed, The Farm Bureau Mutual Insurance Company immediately entered into a reservation of rights and non-waiver agreement with the defendants, and each of them. That a copy of said Notice and Acknowledgment of Non-Waiver of Rights is attached hereto, marked Exhibit 'A' and made a part hereof by reference.

"3. That the said reservation of rights and non-waiver agreement with the defendants, and each of them, was based upon Exclusion (K) of said policies of insurance, namely, No. 282467 and No. 258182, which provides as follows:

"'This policy does not apply . . . (K) under any of the coverages, while the automobile is operated by any person in any pre-arranged race or competitive speed test.'

"4. That thereafter, in the District Court of Meade County, Kansas, Case No. 6028, Ruth Bogle and Rex Bogle, plaintiffs, filed suit as surviving parents and next of kin of Gary Bogle, deceased, against Donald G. Conway and Henry E. Fisher, alleging that plaintiffs' decedent was injured in an accident while a passenger in an automobile operated by Conway and that such accident was caused by the gross and wanton negligence of the defendants Conway and Fisher who were driving and racing side by side on a two lane highway at a speed in excess of 90 miles per hour. That garnishee defended said action under its reservation of rights previously entered, that in effect a determination was made the accident arose from a pre-arranged race and speed test, and judgment was entered in the District Court of Meade County, Kansas, in said action on the 14th day of June, 1965."

Appellant's exhibit A was the September 30, 1963, instrument hereinbefore set forth.

Appellant then alleged by reason of clause K it was not obligated under its policies and it denied all liability, and demanded a jury trial.

Appellees Ruth and Rex Bogle and appellees Conway and Fisher filed responsive pleadings taking issue with the garnishee's answer upon various grounds. Conway and Fisher admitted the execution of the instrument entitled "Notice and Acknowledgment of Non-Waiver of Rights," but attacked its binding effect for several reasons. Additionally they alleged that on January 7, 1966, appellant mailed to each of them a letter entitled "Disclaimed Notification." The one written to Conway is appended to this opinion; that written to Fisher was identical except as to name of the policyholder and policy number.

Appellant took depositions, including those of Conway, the fathers of both Conway and Fisher, the highway patrolman who investigated the collision, and appellant's claims adjuster. Answers

to requests for admissions of fact by both sides were on file in the case. Additionally the parties stipulated that the testimony of Conway and Fisher in the wrongful death action could be considered as evidence in the garnishment proceeding.

All appellees filed their motions for summary judgment against appellant, and, based on the foregoing state of the record, the trial court on June 24, 1966, sustained the motions and entered judgment for appellees Ruth and Rex Bogle and against appellant for the amount of the Bogles' judgment against Conway and Fisher. This appeal is from that ruling and judgment.

The judgment in the wrongful death action was reviewed in this court and on January 21, 1967, was affirmed (*Bogle v. Conway,* supra.

The principal question upon this appeal is the construction and effect to be given the instrument entitled "Notice and Acknowledgment of Non-Waiver of Rights" based upon the exclusionary clause K in the insurance policy, this being the defense relied upon by appellant in its answer in garnishment. Appellant urges the instrument is valid and enforceable and bars recovery under the policy. Appellees Ruth and Rex Bogle contend it is of no effect, relying on two of our decisions. Appellant counters that the two decisions are distinguishable from the case at bar and suggests reexamination.

The first of the decisions is *Snedker v. Derby Oil Co., Inc.,* 164 Kan. 640, 192 P. 2d 135. That action was one in garnishment against an insurance carrier following a money judgment for damages. This court first stated:

"Where an insurance carrier which has issued an accident liability policy on a motor vehicle, undertakes to represent and defend the insured and the driver of the vehicle in an action to recover damages growing out of an accident in which the vehicle was involved, it cannot thereafter in an action to establish liability on the policy, arising out of the accident, defend on the ground of non-coverage under the policy, unless at the trial in the damage action it had disclaimed liability and given notice of reservation of right to do so. . . ," (Syl. ¶2.)

and further stated:

"It will be noted that under the general rule a liability insurer which assumes the defense of an action against the insured may save itself from the bar of waiver or estoppel in a subsequent action upon the policy if, in the action against the insured, it clearly disclaims liability under the policy, and gives notice of its reservation of a right to set up the defense of noncoverage." (p. 644.)

In the above case neither a disclaimer nor a reservation of rights by way of notice or contract was involved and no distinction between the two was made.

The second decision relied upon by appellee is *Henry v. Johnson*, 191 Kan. 369, 381 P. 2d 538, decided May 11, 1963. This, too, was a garnishment proceeding against a liability insurer based on a judgment against its insured arising out of an automobile collision. There a default judgment was rendered against the insured, who had not notified his insurance carrier of the pendency of the suit prior to the entry of the default judgment, contending he had not received a summons and did not know of the action himself. Later, after the insured had learned of the judgment and had notified his insurance carrier, the carrier wrote the insured the following letter under date of November 3, 1958:

"Dear Mr. Johnson:

"With respect to the automobile accident occurring on December 16, 1957, at Pawnee and Ridgewood Streets in which you were involved, you are hereby notified that the Allstate Insurance Company in investigating the said accident or any claim arising therefrom, or in negotiating for compromise settlement, or in making any settlement or in defending any suit against you or others, or in undertaking to set aside the judgment entered against you on October 30, 1958, in the District Court of Sedgwick County, Kansas, Case No. A-73383, and to take whatever further action shall be deemed advisable, or in any other way acting or failing to act, does not waive any of its rights or admit any obligations under the policy.

"We are making this reservation of rights because of your failure to comply with the policy conditions entitled '2, Notice of Claim or Suit' and '8, Assistance and Cooperation of the Insured' and for other reasons.

"The service of this notice upon you does not deprive you of any rights you may have against this company." (p. 370.)

The insurance carrier, representing its insured, then sought to have the default judgment set aside, but was unsuccessful, and the garnishment ensued. The garnishee carrier defended upon the basis of the letter quoted above. In holding against the garnishee this court stated:

"This brings us to the garnishee's notice of nonwaiver and reservation of rights of November 3, 1958, and whether it was sufficient to save the garnishee from the bar of waiver or estoppel and permit it to plead its policy defenses of noncoverage in the garnishment proceeding. It is a well-established rule that where an insurance company under a liability policy takes charge of the only defense which may then be imposed to an action on which liability rests (here, a motion to set aside a default judgment and answer on the merits), it will be estopped from thereafter questioning the claim because it was beyond the

terms of the policy or because of a breach of a noncoverage clause, unless it gives notice of its right to set up the defense of noncoverage under an adequate and proper nonwaiver and reservation of rights notice to the insured. (*Brandon v. St. Paul Mercury Indemnity Co.*, 132 Kan. 68, 71, 294 Pac. 881, 83 A. L. R. 673; *Snedker v. Derby Oil Co., Inc.*, 164 Kan. 640, 192 P. 2d 135; Anno: 81 A. L. R. 1326 and 38 A. L. R. 2d 1161.)

"This court has recognized that an insurer may enter into a nonwaiver and reservation of rights arrangement with its insured and has enforced such agreements. (*Iowa Hardware Mutual Ins. Co. v. Burgen*, 178 Kan. 557, 290 P. 2d 1034.) The rule with respect to the sufficiency of such an arrangement was stated in *Snedker v. Derby Oil Co., Inc.*, supra, as follows:

"'It . . . (is) . . . the general rule a liability insurer which assumes the defense of an action against the insured may save itself from the bar of waiver or estoppel in a subsequent action upon the policy if, in the action against the insured, *it clearly disclaims liability under the policy*, and gives notice of its reservation of a right to set up the defense of noncoverage. . . .' (1. c. 644.) (Emphasis supplied.)

"That rule is to be applied in accordance with general and well-established rules with respect to the construction of insurance policies and related papers pertaining to liability which may arise thereunder. One basic rule is that, since the company prepares the policy and its representatives, as here, prepare the related papers, thereby selecting the language employed, such policy and papers are to be construed strongly against the insurance company and in favor of the insured; that it is their duty to make the meaning clear, and if they fail to do so, the insurer and not the insured must suffer. Stated another way, if the insurer desires to limit its liability, it should so state in clear and concise language in the policy or in the related papers involved. (*Jameson v. Farmers Mutual Automobile Ins. Co.*, supra, and cases cited.) Appleman, in his Insurance Law and Practice, Vol. 16, §9377, p. 976, states the rule with respect to a notice of nonwaiver and reservation of rights arrangement with the insured as follows:

"'Such agreements are construed strictly against the insurer and liberally in favor of the insured, and will not be extended beyond the exact terms of the agreement.'" (pp. 375-377.)

This court considered the letter of reservation vague and ambiguous and insufficient within the meaning of the language used in *Snedker*. The court further pointed out that the insurer, prior to the filing of the suit, had had notice of its insured being in the collision and had investigated the collision, and both before and after the execution of the reservation of rights letter, had actively participated in the defense of other legal proceedings arising from the collision.

Appellant contends a different test should be applied to contractual nonwaiver and reservation of rights agreements from that applicable to unilateral notices of reservation of rights. We see no reason for making any distinction. In any event, the position of the

insurance carrier in not wishing to waive nor be estopped to set up its rights by defending the action against the insured, to be effective, must be made clear to the insured so that he may make an intelligent decision whether to consent to the assumption of his defense and the control of his lawsuit by the carrier, or to take another course. It matters little, in our opinion, whether the insurer states that position in a unilateral notice to its insured or in a bilateral agreement with the insured. The relationship between the insured and his insurer remains contractual in nature. If unilateral notice is employed and the insured makes no objection to his further defense of the action by his insurer, his consent may be inferred from such acquiescence (See 7A Appleman, Insurance Law and Practice [1962], §4694). In either case, the insured must be fairly and timely informed of the insurer's position. That information should include the basis for the position taken by the insurer. Only then is the insured in a position to make his choice as to the course to pursue in protecting himself. The insured may or may not wish to permit the insurer to carry on his defense under its contract obligation to do so. We think that is the import underlying *Henry v. Johnson.* (See annotation and cases cited at 38 A. L. R. 2d 1148 and A. L. R. 2d Later Case Service; also 7A Appleman, Insurance Law and Practice [1962], §4694.)

We turn now to the September 30, 1963, instrument upon which appellant relies. It is more vaguely and ambiguously drafted than that held insufficient in *Henry.* It makes no mention of any exclusionary clause in the policy or of any purported factual basis upon which a denial of coverage might be predicated; it does not tell what right of the insurer to deny liability was contemplated, nor why; it contains no reason or basis for the statements which are made, and finally, concededly, no disclaimer of liability is stated.

That a better notice could have been drafted is apparent when we examine the formal disclaimer notification dated January 7, 1966. Had such a notice been timely given so as to be effective if otherwise sufficient we might have a different question before us.

Appellant argues it should not be necessary for an insurer to detail fully in a reservation instrument all of its rights inasmuch as all the parties want to do is maintain the status quo. Much more is involved: the parties are hardly upon equal footing absent information to the insured as to what that status quo is and means. It has been said that good faith, the essence of insurance contracts, "de-

mands that the insurer deal with laymen as laymen and not as experts in the subtleties of law and underwriting," (*Merchants Ind. Corp. v. Eggleston,* 37 N. J. 114, 122, 179 A. 2d 505), and we have adhered to that philosophy in construing policies and related papers prepared by insurance carriers (*Henry v. Johnson,* supra).

Appellant urges it should be permitted to operate (defend the action) under the Non-Waiver of Rights Agreement to wait and see if it is liable under the policy. It points out that in many cases the insurer may not know until final conclusion of the litigation whether it is liable or not. We have no quarrel with this theory provided the insured is adequately and timely informed of the insurer's position.

This case illustrates why that position must be made clear, bearing in mind the duty of the insurer to fulfill its policy-contracted obligation of defense with the utmost loyalty to its insured. To start with, by coincidence, here one carrier has the insurance on both vehicles whose drivers are charged with separate acts of negligence and who have a different status with respect to the person killed in the collision. Beyond this, such a case presents the possibility of a conflict of interest between the rights of the insurer and its insured. Conceivably the drivers could be held liable for damages while engaging in a race, the establishment of which race would be a policy defense to the insurer. In other words, a policy defense could be developed at the expense of the insured. We would want it understood we make no intimation that such was attempted in the principal action or that a good faith defense was not afforded the insured. We merely point up the importance of the requirement of adequate, timely information of the insurer's position so as to avoid any *possibility* of conflicting interests.

Appellant further contends the doctrine of estoppel to assert a policy defense should not be applied because there is no showing of prejudice resulting to either Conway or Fisher from its handling of their defense. In *Henry v. Johnson,* supra, prejudice was assumed without discussion of the subject. We approve this as the better rule because, as said in *Merchants Ind. Corp. v. Eggleston,* supra, since the course cannot be rerun, it would be futile to attempt to prove or disprove that the insured would have fared better on his own.

We hold then that the September 30, 1963, instrument did not fairly inform Conway and Fisher as to appellant's position and

hence was ineffective to reserve to appellant the right to disclaim liability under its policies and save it from the bar of waiver or estoppel in the garnishment proceeding. Therefore, the trial court correctly rendered summary judgment against appellant.

In arriving at this conclusion we have not overlooked appellant's contention that such rendition was improper because there remained genuine issues of material fact. In our view, under the issues formed by the pleadings, once the nonwaiver instrument is held to be ineffective, the proceeding is determined.

The judgment of the trial court is affirmed.

APPROVED BY THE COURT.

APPENDIX

"Disclaimer Notification

"This is to advise you that the Farm Bureau Mutual Insurance Company, Inc., of Manhattan, Kansas, which has heretofore issued a policy of Insurance No. 282467 to Gene and or Phill Conway hereby notifies you that by reason of its Non-Waiver of Rights Agreement, earlier executed by you, the said Company disclaims liability under the numbered policy of insurance with respect to an accident which occurred on September 29, 1963, near Meade, Kansas.

"You are further notified that the denial of liability coverage to Donald G. Conway and any others claiming by or through Donald G. Conway is based upon exclusion (K) of said policy which provides as follows:

"This policy does not apply  .  .  .  (K) under any of the coverages, while the automobile is operated by any person in any pre-arranged race or competitive speed test.

"The Farm Bureau Mutual Insurance Company, Inc., will, by virtue of its previous agreement to do so, provide a further defense for you to the extent of attempting to perfect an appeal from the judgment of the District Court of Meade County, Kansas, Case No. 6028. In so doing, however, the company specifically declines to furnish in your behalf a Surety for a supersedeas bond, and shall not be liable for the judgment, should said appeal fail for any reason.

"You are further advised, you may, at your own expense, secure such supersedeas bond in your own behalf. Thus you are notified that the Farm Bureau Mutual Insurance Company, Inc., has by this instrument, and earlier instruments, agreed to provide you a defense in matters arising from the dated accident, but by reason of the policy Exclusion as set out earlier disclaims liability under the policy and will not be liable for any judgment and further reserves its right to assert defenses of non-coverage.

"Dated this 7th day of January, 1966.

"Farm Bureau Mutual Insurance Co., Inc.
"/s/ C. O. Jacobson
"By C. O. Jacobson
"Claims Attorney"