24

ALASKA NATIONAL INSURANCE COMPANY, ET AL., *Respondents*, v. HAROLD A. BRYAN, ET AL., *Defendants*, KEVIN D. BRUNK, ET AL., *Appellants*.

*Wayne D. Hawn, Michael C. Kahrs,* and *Patrick H. LePley* (*Phillip P. Weidner,* of counsel), for appellants.

*A. Richard Dykstra* and *J. William Ashbaugh* (of *Stafford Frey Cooper*) and *Craig H. Bennion* and *Thomas M. Jones* (of *Cozen & O'Connor*), for respondents.

¶1 COLEMAN, J. — An employee of Wards Cove Packing Company injured a passenger on his motorcycle while returning to Wards Cove's property after a night of heavy drinking. The injured passenger alleges that Wards Cove's insurer is liable for a judgment entered against the em-

ployee because the employee was acting in the business or personal affairs of Wards Cove at the time of the accident. In the alternative, the passenger argues that the insurer acted in bad faith and is estopped from denying coverage. We affirm the trial court's orders granting summary judgment in favor of the insurer because (1) the trial court properly applied Washington law, (2) the employee was not acting in the business or personal affairs of his employer when he was returning from a night of social drinking, (3) the insurer adequately reserved its right to deny coverage, (4) the insurer allowed the employee to select his own counsel and paid for all of counsel's fees in the underlying tort action, (5) the insurer was not obligated to pay for the employee's defense in the declaratory judgment action, (6) the passenger and employee did not produce evidence that the insurer acted in bad faith, and (7) the trial court did not abuse its discretion in denying the employee's request for a continuance and additional discovery.

## FACTS

¶2 Harold Bryan was employed as an engineer for Wards Cove Packing Company aboard a fishing vessel in Kenai, Alaska. Bryan lived aboard the vessel and was on call 24 hours a day. When Bryan left Seattle for Kenai, he took his motorcycle with him, at Wards Cove's expense. One night, Bryan drove the motorcycle to several bars. After consuming a large amount of alcohol, Bryan attempted to give Kevin Brunk a ride back to the Wards Cove facility. Bryan erred in negotiating a turn, and both he and Brunk were thrown off the motorcycle into a gravel pit. Brunk was severely injured. Bryan was legally intoxicated at the time of the accident.

¶3 Brunk and his parents, Orville and Peggy Brunk (hereinafter the Brunks), sued Wards Cove and others in Alaska, alleging that Wards Cove was vicariously liable for Bryan's actions and was negligent in operation of the gravel pit where the accident occurred (underlying suit). Initially,

the Brunks sued Bryan only as an agent of Wards Cove. Eventually, Wards Cove and the state of Alaska brought cross claims for apportionment against Bryan, and the Brunks amended their complaint to sue Bryan personally. Wards Cove tendered the defense of the underlying suit to its liability insurer, Alaska National Insurance Company.[1] Alaska National arranged for Michael Barcott to represent Wards Cove.

¶4 Additionally, Alaska National provided an attorney for Bryan under the "Business Auto Policy." This defense, however, was subject to a reservation of rights. Alaska National allowed Bryan to choose his own attorney. Alaska National sent the initial reservation of rights letter to Bryan on October 6, 1995, and stated that it would deny coverage if it was determined that Bryan was not acting in the "business or personal affairs" of Wards Cove.

¶5 Ben Esch appeared on Bryan's behalf and represented him until Patrick McKay took over Bryan's defense. McKay continued to represent Bryan through the conclusion of the underlying suit.

¶6 In April 1996, Wards Cove moved for summary judgment in the underlying suit. The Alaska trial court granted Wards Cove's motion in part, ruling that Wards Cove was not vicariously liable for Brunk's injuries and finding that there were issues of material fact precluding summary judgment on the claim that Wards Cove was negligent in operation of the gravel pit. The Brunks settled with Wards Cove on the remaining claim, releasing Wards Cove from all claims, including claims for punitive damages and bad faith. The Brunks eventually settled with all defendants except Bryan.

¶7 Alaska National and Federal Insurance filed a declaratory judgment action against Bryan and the Brunks in

---

[1] Wards Cove also had an umbrella policy through its excess carrier, Federal Insurance Company.

Washington state.[2] Before filing their answers, the Brunks and Bryan entered into a settlement for $43,183,079.86, which the Alaska court formally entered as a judgment against Bryan. As part of the settlement, Bryan assigned all of his rights against Alaska National and Federal Insurance to the Brunks. Alaska National and Federal Insurance filed a motion for summary judgment, declaring that Bryan was not covered under the insurance policies because he was not using his motorcycle in the "business or personal affairs" of Wards Cove at the time of the accident. The King County Superior Court found that Bryan was not acting within the business or personal affairs of Wards Cove and "that unless otherwise established by estoppel, bad faith, or any other basis claimed by the Brunk Defendants, Harold Bryan does not qualify as an insured under the Business Auto Policy."

¶8 The Brunks filed a motion for summary judgment and set hearing for February 2003. Alaska National and Federal Insurance filed a motion for partial summary judgment regarding the duty to defend and estoppel and set hearing for the same day as the Brunks' motion. The Brunks filed a motion to continue under CR 56(f), stating that they needed additional discovery. The trial court continued the summary judgment hearing until May. After the hearing on cross motions for summary judgment, the trial court granted Alaska National and Federal Insurance's motions and denied the Brunks' motion.

¶9 The trial court subsequently denied the Brunks' remaining discovery motions. The trial court also granted Alaska National and Federal Insurance's motion for final summary judgment and dismissed all of the Brunks remaining claims. The Brunks appeal.[3]

---

[2] Alaska National and Federal Insurance also filed a declaratory judgment action in South Dakota where the Brunks resided, but that action was dismissed when the Brunks consented to the jurisdiction of the Washington court.

[3] Alaska National and Federal Insurance filed a motion to strike portions of the appendix to the Brunks' reply brief. Given our decision in this case, it is not necessary to strike the challenged portions, and therefore, we deny the motion.

## ANALYSIS

▮▮ ¶10 We first address whether the trial court erred in applying Washington law in the declaratory judgment action. Before a court will conduct a conflict of law analysis, the party seeking to apply foreign law must show that an actual conflict exists between the presumptive Washington law and the law of the foreign state. *Rice v. Dow Chem. Co.*, 124 Wn.2d 205, 210, 875 P.2d 1213 (1994). An actual conflict exists if the two states' laws produce different results on a legal issue. *Seizer v. Sessions*, 132 Wn.2d 642, 648, 940 P.2d 261 (1997). If applying the two states' laws would produce the same result, there is a "false conflict" and Washington law will presumptively apply. *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 100-01, 864 P.2d 937 (1994). The only difference between Alaska and Washington law in this context appears to be the requirement in Alaska that an insurer allow the insured to select counsel. Here, Alaska National did allow Bryan to select his own counsel, and therefore, the more stringent requirement was met. Thus, it is not necessary for the court to conduct a conflict of law analysis.[4]

▮ ¶11 The next issue is whether the trial court erred in determining that Bryan was not acting in the business or personal affairs of Wards Cove during the accident. The interpretation of an insurance policy is a question of law, and this court will review the issue de novo. *Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 424, 932 P.2d 1244 (1997).

▮ ¶12 The first step in interpreting an insurance contract is to determine if the policy language is ambiguous. Policy language is ambiguous if it is, on its face, susceptible to different reasonable interpretations. *Peasley*, 131 Wn.2d at 424. "Overall, a policy should be given a practical and reasonable interpretation rather than a strained or forced construction that leads to an absurd conclusion, or that

---

[4] The Brunks also filed a motion to certify certain issues to the Supreme Court of Alaska. We deny this motion, as there is no procedure for this court to certify issues to the supreme court of another state.

renders the policy nonsensical or ineffective." *Transcont'l Ins. Co. v. Wash. Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 457, 760 P.2d 337 (1988). The parties do not dispute the underlying facts of the case regarding Bryan's accident. Rather, the parties dispute the application of the facts to the language of the insurance policy. Here, the Brunks argue that the "employees as insureds" provision is ambiguous. The business auto policy states: "The following is added to the LIABILITY COVERAGE WHO IS AN INSURED provision: Any employee of yours is an 'Insured' while using a covered 'auto' you don't own, hire or borrow in your business or your personal affairs." The court must give undefined terms their plain and usual meaning. Here, the term "business or personal affairs" is not ambiguous.

¶13 The Brunks focus on the trial court's determination that "business or personal affairs" is broader in scope than "course and scope of employment." While this distinction is appropriate, the qualification "business and personal affairs" must have some meaning. The Brunks argue that because of the nature of his employment with Wards Cove, Bryan was in the business or personal affairs of Wards Cove during the accident. The Brunks point out that Bryan was employed at a remote site and that having the motorcycle available to him was of substantial benefit to Wards Cove because it allowed him to leave the premises for recreational activities and then return to Wards Cove's property on short notice if necessary, which was required under his contract of hire. The Brunks also focus on Bryan's status as a 24-hour on call employee. Under this interpretation, Bryan would be acting in the business and personal affairs of his employer during his entire employment at Wards Cove. This is simply not a reasonable interpretation of the insurance policy. If the parties intended such expansive coverage, the parties would have explicitly covered Bryan as an insured under the policy.

¶14 It is not reasonable to interpret the policy to provide coverage anytime Bryan is driving his automobile while employed by Wards Cove because it would render the

qualifier "in business or personal affairs" meaningless.[5] Bryan was undisputedly drinking at the various bars for his own recreation. He was not responding to a call from Wards Cove or in any way attending to the affairs of Wards Cove. Rather, he was returning home after a night of recreational drinking. It is not reasonable to interpret the insurance policy to cover this conduct.

¶15 The Brunks also rely on several Alaska workers' compensation cases where the courts found coverage for injuries incurred during recreational activities. *See M-K Rivers v. Schleifman*, 599 P.2d 132 (Alaska 1979); *Anderson v. Employers Liab. Assurance Corp.*, 498 P.2d 288 (Alaska 1972); *N. Corp. v. Saari*, 409 P.2d 845 (Alaska 1966). Workers' compensation law, however, addresses a different issue than insurance coverage. Workers' compensation is premised

> upon the existence of an employment relationship, not upon a determination of culpability. In return for the employee giving up his right to sue the employer in the event that the employer was at fault in causing the injury, the system provides the employee with moderate assured benefits to compensate for loss of earning capacity, not for bodily injury.

*M-K Rivers*, 599 P.2d at 135 (footnote omitted). Because of the nature of this relationship, courts liberally construe the workers' compensation statutes to compensate injured workers. *Sacred Heart Med. Ctr. v. Dep't of Labor & Indus.*, 92 Wn.2d 631, 635, 600 P.2d 1015 (1979). In the workers' compensation context, courts have determined that the nature of remote site employment expands the coverage for "work related" injuries when the employee is engaged in reasonable recreational activities. This does not determine, however, whether there is insurance coverage for Bryan's activities, as the policy is not based on the same premise as the workers' compensation statutes. Because of the differ-

---

[5] The Brunks repeatedly state that Wards Cove transported Bryan's motorcycle to Alaska free of charge, did not require Bryan to have individual liability insurance, did not restrict Bryan's drinking even though it knew that Bryan was a "big boozer," and did not tell Bryan not to drive while intoxicated. These facts, however, are not relevant to the determination of insurance coverage.

ent purposes of workers' compensation and liability insurance, coverage may apply in one context, but not in the other. The distinction between workers' compensation and vicarious liability is illustrative:

> While workmen's compensation law and *respondeat superior* doctrine both involve allocations of costs regarding industrial accidents, they differ in scope. Workmen's compensation benefits turn solely upon whether the employee was injured while performing an activity related to his job—and "relatedness" is usually a function of benefit to the employer. In contrast, *respondeat superior* subjects employers to liability for injuries suffered by an indefinite number of third persons. To limit this burden of liability, the narrower concept, "scope of employment," has long been tied to the employer's right to control the employee's activity at the time of his tortious conduct.

*Luth v. Rogers & Babler Constr. Co.*, 507 P.2d 761, 764 (Alaska 1973) (footnote omitted). Thus, the workers' compensation cases do not apply the same standard and are not applicable here.[6]

¶16 The trial court correctly concluded that, as a matter of law, Bryan was not acting in the business or personal affairs of Wards Cove because his activities that night were clearly not related to his employment, nor were his actions reasonable.

¶17 The Brunks argue that even if there is no coverage under the policy, Alaska National is liable for the entire settlement amount because it acted in bad faith. When an insurer refuses, in bad faith, to settle a claim, the insured may take reasonable steps to protect itself, which may include consenting to a judgment. *Besel v. Viking Ins. Co. of Wis.*, 146 Wn.2d 730, 736, 49 P.3d 887 (2002). Here, the Brunks argue that Alaska National acted in bad faith by (1) bringing the declaratory judgment action and refusing to provide counsel for Bryan in that action, (2) violating its

---

[6] In any event, the workers' compensations cases repeatedly refer to "reasonable" activities in determining workers' compensation coverage. Here, driving a motorcycle while extremely intoxicated cannot amount to a "reasonable" activity in any context.

contractual duties under the reservation of rights letters, and (3) colluding with Wards Cove to manipulate Bryan.

■ ¶18 The Brunks argue that Alaska National acted in bad faith by filing a declaratory judgment action because it was an attempt to "pull the defense" from Bryan "midstream." The Brunks argue that once the insurer chose to defend under a reservation of rights, it could not discontinue the defense. This argument is irrelevant because Alaska National continued to provide a defense for Bryan until the conclusion of the underlying tort action. Additionally, the cases and statute that the Brunks cite do not stand for the proposition that an insurer may not discontinue a defense once it chose to defend under a reservation of rights. In *CHI of Alaska, Inc. v. Employers Reinsurance Corp.*, 844 P.2d 1113 (Alaska 1993), the Alaska Supreme Court held that an insurer must allow its insured to choose independent counsel when a conflict of interest arises. This decision was codified in Alaska Statutes section 21.89.100(a):

> If an insurer has a duty to defend an insured under a policy of insurance and a conflict of interest arises that imposes a duty on the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to the insured unless the insured in writing waives the right to independent counsel.

Thus, under Alaska law, Alaska National had the duty to provide independent counsel for Bryan because its interests were not the same as Bryan's interests. This is exactly what Alaska National did.

¶19 Additionally, the Brunks argue that Alaska National acted in bad faith by commencing the declaratory judgment action in Washington. The Brunks challenge the venue of the action, arguing that Alaska National committed to an exclusive Alaska forum in its reservation of rights letters. There is no mention, however, of forum in the letters, and there is no reasonable interpretation of the letters that would require Alaska National to bring the suit in Alaska. There is no evidence that Alaska National chose the Washington forum in bad faith. Indeed, Bryan, the chief defen-

dant in the declaratory judgment action, is a resident of Washington.

¶20 The Brunks also argue that Alaska National did not adequately reserve its rights and that Alaska National could withdraw its defense only if the Alaska court made a determination that Bryan was not acting in the business or personal affairs of Wards Cove during the accident. The Brunks' interpretation of the reservation of rights letters is too narrow. Alaska National clearly reserved the right to challenge coverage. Under Washington law, an insurer is authorized to file a declaratory judgment action to determine coverage:

> If the insurer is unsure of its obligation to defend in a given instance, it may defend under a reservation of rights while seeking a declaratory judgment that it has no duty to defend. A reservation of rights is a means by which the insurer avoids breaching its duty to defend while seeking to avoid waiver and estoppel.

*Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 761, 58 P.3d 276 (2002) (citation omitted). Additionally, declaratory judgment actions are the proper way to determine coverage under Alaska law:

> The Supreme Court of Alaska has resolved this problem by concluding that where, as here, there is a dispute over coverage, the tort litigation will not determine any relevant fact, and the parties, unless they settle their dispute, will always be required to litigate in a separate proceeding, i.e., a declaratory judgment proceeding.

*Ryan v. Sea Air, Inc.*, 902 F. Supp. 1064, 1068 (D. Alaska 1995). Thus, the only reasonable interpretation of the reservation of rights letters is that Alaska National reserved the right to deny coverage if it was judicially determined that Bryan was not acting in the business and personal affairs of Wards Cove. Alaska National took the appropriate action and sought determination of whether it had a duty to defend. There is no authority to support the argument that the coverage determination must be made in the underlying lawsuit.

¶21 Additionally, the Brunks argue that the reservation of rights was not adequate because Alaska National did not reserve its right to assert noncoverage after Wards Cove and the State of Alaska added cross claims against Bryan and subjected him to personal liability. Alaska National, however, in its first reservation of rights letter made it clear that it would not provide coverage if it was judicially determined that Bryan was not acting in the business or personal affairs of Wards Cove. The addition of the cross claims did not change Alaska National's position or the terms of coverage.

¶22 The Brunks also argue that Alaska National violated its duty by refusing to pay for Bryan's defense in the declaratory judgment action. The Brunks rely on *Olympic Steamship Co. v. Centennial Insurance Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991). *Olympic*, however, held that an insurer is required to pay attorney fees for the declaratory judgment action if the court finds that there is coverage. The payment is required after the judicial determination is made, and fees under *Olympic* are awarded only if the insured prevails. *Olympic*, therefore, does not support the proposition that Alaska National was required to pay for Bryan's fees during the declaratory judgment action. The Brunks also argue that the *CHI* case and Alaska Statutes section 21.89.100 require the payment of fees during both the underlying lawsuit and the declaratory judgment action. These authorities, however, do not provide for such a requirement.

■ ¶23 The Brunks repeatedly assert that an insurer that defends under a reservation of rights has an "enhanced obligation of good faith" and by breaching that duty, Alaska National is estopped from denying coverage. Washington courts have held that an insurer defending under a reservation of rights has an enhanced obligation to its insurer. This enhanced obligation is necessary because of the potential for conflicts of interest between the insurer and the insured. *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 387, 715 P.2d 1133 (1986). Here, Alaska National provided independent counsel for Bryan and did not par-

ticipate in the defense. Bryan and his independent attorney were in control of his defense. The same concerns about conflict of interest therefore do not arise to trigger the enhanced obligation, and estoppel does not apply. Indeed, because Alaska National provided independent counsel to Bryan, it appears that estoppel does not apply at all, even without a proper reservation of rights because there could not be any prejudice:

> Because the insurer has given up control of the insured's defense, the insured is not presumptively prejudiced by the absence of a reservation of rights letter. Even if such a letter would have disclosed a conflict of interest between the insurer and the insured with regard to the conduct of the insured's defense, the fact the insurer is unable to control that defense necessarily renders the conflict innocuous.

1 ALLAN D. WINDT, INSURANCE CLAIMS AND DISPUTES: REPRESEN-TATION OF INSURANCE COMPANIES AND INSUREDS § 2:11 at 87-88 (4th ed. 2001); see *O'Neill Investigations, Inc. v. Ill. Employ-ers Ins. of Wausau*, 636 P.2d 1170, 1178 (Alaska 1981). Alaska National did not act in bad faith by bringing the declaratory judgment action to determine its duty to defend and whether Bryan was covered under the policy.

¶24 The Brunks also argue that the reservation of rights letters sent by Alaska National formed contracts with Bryan and that Alaska National violated the terms of the reservation of rights letters. Specifically, the Brunks point to language in the letters to argue that Alaska National made a contractual promise to defend Bryan in both the underlying tort action and the declaratory judgment action and that it promised to pay Bryan's attorney fees unless the court determined in the underlying tort action that Bryan was not acting in the business or personal affairs of Wards Cove. The Brunks focus on the term "lawsuit" as used in the first reservation of rights letter:

> The purpose of this letter is to advise you that Alaska National Insurance Company is prepared to offer to provide you with a defense in the lawsuit subject to a reservation of Alaska National's rights. Specifically, Alaska National will reserve the

right to decline to pay any judgment against you in the event that it is determined in the course of the lawsuit that the motorcycle you were operating was hired or borrowed by a named insured or that you were not using the motorcycle in the business or personal affairs of Wards Cove Packing Company or any other insured named under Alaska National's policy at the time of the accident. In the event of such a determination, Alaska National also reserves the right to withdraw the defense.

App. at 8. The second reservation of rights letter stated:

Alaska National continues to reserve its rights to decline to pay any judgment against you in the event that it is determined that you were not using the motorcycle in the business or personal affairs of Wards Cove Packing Company or any other named Insured under Alaska National's policy at the time of the accident. As you are probably aware, the Court in the lawsuit has already ruled that you were not in the course and scope of your employment with Ward's Cove Packing Company at the time of the accident. Unless this ruling is changed by subsequent proceedings, Alaska National will not pay any amounts that may be awarded against you on the claims in the lawsuit.

Though Alaska National reserved the right to withdraw from your defense it has not done so, and it will continue to pay the reasonable expenses incurred for your representation in this matter by Mr. McKay.

Alaska National does not intend to waive any grounds that it may have to deny coverage, or any of its rights under the policy and the law.

App. at 10.

¶25 The Brunks cite a Kansas case, which stated that "[t]he relationship between the insured and his insurer remains contractual in nature." *Bogle v. Conway*, 199 Kan. 707, 433 P.2d 407, 411 (1967). This case, however, does not stand for the proposition that a reservation of rights letter creates a new contract between the parties, but rather it recognizes that the overall relationship between the insurer and the insured is contractual in nature. The purpose of a reservation of rights letter is not to change the contractual

relationship of the parties, but rather it is to identify the insurer's position regarding coverage and serves to protect the parties by providing a conditional defense to the insured and protecting the insurer from a bad faith claim if coverage is due. Here, Alaska National clearly reserved its right to challenge coverage, and its reservation of rights letters did not alter its contractual obligations toward Bryan. Thus, Alaska National is not estopped from denying coverage based on contractual obligations.

¶26 Additionally, the Brunks argue that Alaska National should be estopped from asserting noncoverage because it acted in bad faith by colluding with Wards Cove to manipulate Bryan, in part by tricking him into signing his first affidavit. There is no evidence, however, that Alaska National knew about the affidavit before Bryan signed it or conspired with Wards Cove to obtain it. Additionally, Bryan does not allege that any of the facts in the first affidavit are untrue and he submitted a second affidavit to provide additional information to "explain" his first affidavit.

¶27 The Brunks repeatedly allege that Alaska National conspired with Wards Cove to defeat coverage. The Brunks, however, do not produce any evidence of the alleged collusion. The Brunks also argue that Alaska National failed to disclose its true coverage position because Alaska National attempted to equate course and scope of employment with business and personal affairs. Alaska National identified, in its first reservation of rights letter, that it was reserving the right to deny coverage if Bryan was not acting in the business or personal affairs of Wards Cove. Bryan, therefore, had adequate notice of the insurer's position that it would deny coverage if Bryan was not acting in the business or personal affairs of Wards Cove. The issue of what "business and personal affairs" meant was the precise issue being litigated. Thus, Alaska National clearly identified its coverage position in its reservation of rights letters.

¶28 Under the circumstances, the Brunks have not brought forth specific facts to raise an issue of bad faith.

Therefore, the trial court properly granted Alaska National's motion for summary judgment.[7]

■ ■ ¶29 Finally, the Brunks argue that the trial court erred in denying their motion for additional discovery. Under CR 56(f), the trial court has the discretion to allow additional discovery or grant a continuance to allow a party opposing summary judgment to obtain information necessary for the required affidavits. This court will not reverse a trial court's decision absent a manifest abuse of discretion. *Turner v. Kohler*, 54 Wn. App. 688, 693, 775 P.2d 474 (1989). A trial court abuses its discretion if it bases its decision on untenable or unreasonable grounds. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Here, the Brunks had ample time to conduct the necessary discovery. The suit commenced on March 15, 2002. The Brunks answered the complaint in October 2002, after which Alaska National filed its motion for partial summary judgment. The parties agreed to continue the motion until December 20, 2002.

¶30 On December 6, 2002, the Brunks filed a motion for partial summary judgment, noting hearing for February 14, 2003. The Brunks filed some discovery motions and requested a continuance of the December 20, 2002 hearing, arguing that they needed additional time for discovery. The trial court denied the motion for a continuance and granted Alaska National's motion for summary judgment regarding coverage.

¶31 Alaska National responded to the Brunks' discovery requests and produced thousands of documents on January 6, 2003. The Brunks did not arrange for copying of the documents until January 24, 2003. The Brunks also cancelled the depositions it had scheduled.

¶32 On January 17, 2003, Alaska National filed a cross motion for summary judgment on the duty to defend and estoppel, and it set hearing for February 14, 2003. The

---

[7] The Brunks also allege that Alaska National violated the Consumer Protection Act (CPA), chapter 19.86 RCW, by acting in bad faith. Because there is no evidence that Alaska National acted in bad faith, there was no CPA violation.

hearing was subsequently renoted for March 21, 2003. During the March 21, 2003 hearing, the Brunks again requested a continuance, arguing that they had not completed the necessary discovery. The court granted the motion for a continuance, granting further discovery regarding certain issues, but stated, "And by May, there will either be some evidence in support of those and the case will proceed or there will be simply bare allegations and conclusions without evidentiary support and the case will be dismissed." Apparently, the Brunks did not complete the discovery and in May requested another continuance. The trial court denied the motion and set hearing for May 30, 2003. The Brunks argue that the trial court abused its discretion by refusing to continue the case beyond May 2003 and denying its remaining discovery motions. Here, the trial court clearly gave the Brunks ample opportunity to conduct the necessary discovery as the case had been pending for over a year and the Brunks did not diligently pursue discovery. Under the circumstances, it was not an abuse of discretion to deny the request for a continuance.

¶33 Affirmed.

ELLINGTON, A.C.J., and BAKER, J., concur.

Reconsideration denied December 21, 2004.

Review denied at 155 Wn.2d 1007 (2005).