No. 39,809

Iowa Hardware Mutual Insurance Company, *Appellee*, v. Walter S. Burgen and Mary Ellen Burgen, his wife, *Appellants*.

(290 P. 2d 1034)

Opinion filed December 10, 1955.

*Harold E. Doherty*, of Topeka, argued the cause and *G. Clay Baker* and *Ernest J. Rice*, both of Topeka, were with him on the briefs for the appellants.

*Howard A. Jones*, of Topeka, argued the cause and *Charles L. Davis, Jr.*, and *William E. Haney*, both of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action to cancel an automobile insurance policy. Judgment was for the plaintiff. Defendants have appealed.

The action was commenced on December 5, 1953. After the formal identification of the parties, the amended petition alleged that on October 18, 1953, defendants applied for and plaintiff issued a standard insurance policy on an automobile; that the issuance of the policy was procured from plaintiff's agent by fraudulent material statements of fact by defendant Walter Burgen; that at the time the policy was written plaintiff's agent told Walter he must furnish it with certain information; that the agent asked the questions and Walter told him that to the best of his knowledge he had never been denied insurance and no company had ever canceled any insurance policy issued to him; that in reliance on the truth of these statements the agent wrote and delivered the policy; that subsequent to the issuance of the policy plaintiff discovei ad that answers given to the questions were false in that Mary Burgen

had no valid driver's license, Walter's license had on three prior occasions been revoked, both defendants had been denied insurance or had policies canceled, both defendants had made a claim for loss against other companies and Walter had on three occasions been arrested for reckless driving and driving while intoxicated; that the truth of these facts was material to plaintiff in classifying defendants as a risk and had Walter answered the questions truthfully the policy would not have been issued; that defendants gave the false information knowing it was false for the purpose of inducing plaintiff's agent to issue the policy; that when plaintiff learned of the falsity of the statements it caused to be delivered to defendants a notice of cancellation and tendered a check for the amount of the premiums; the tender was renewed with the filing of the action; that between the time the policy was issued and prior to the time the plaintiff discovered the falsity of the statements defendants were involved in an automobile collision with another automobile and three other persons and the other persons all had contingent claims against the defendants, and the plaintiff; that because of such multiplicity of suits plaintiff had no adequate remedy at law.

The prayer was that the policy be canceled.

The defendants filed separate answers.

Mary's answer was first a general denial, then specifically denied Walter was her agent; then admitted that Mary and Walter had taken out the policy; that Mary never saw nor knew the agent for the plaintiff until she paid him for the policy; that plaintiff was estopped from denying coverage under the policy; that plaintiff had all the information set out in its amended petition prior to the date of the collision and failed to notify Mary that it expected to cancel it; that the agent told her after the collision that he had a telegram and the policy was to be canceled as of the date of the collision; that subsequent to the date of the collision an agent of plaintiff negotiated with the parties injured in it and led them to believe defendant was insured and by this action had caused several suits to be filed against defendants and plaintiff was estopped to deny coverage.

Both defendants also filed a cross petition in which they incorporated allegations of plaintiff's petition; set out damages they had sustained; and prayed judgment for that amount.

Walter in his separate answer first admitted the issuance of

the policy; then denied that he made any statements to the agent; alleged that plaintiff had prior knowledge through its agent that defendant had had insurance canceled and denied that defendant made any statement to the agent before the policy was issued; alleged plaintiff was estopped from denying coverage under the policy subsequent to the time when the collision occurred; that plaintiff through its agents contacted the claimants and attempted to secure medical data from them and advised them an insurance policy was in force and offered to settle claims for them; that on January 8, 1954, plaintiff advised defendant by letter that it was undertaking the defense of actions filed as a result of the collision and such defense was without the consent of defendants and by the election of the plaintiff; that plaintiff by its conduct placed defendants in a position whereby it had led them to believe defendants had insurance and plaintiff by its actions had encouraged the filing of suits against defendants; that plaintiff was estopped to deny coverage under the policy.

The plaintiff filed a reply and answer to the cross petition in which it first alleged a general denial; then admitted that its agent on November 5, 1953, advised Mary he had received a telegram from plaintiff on November 3rd requesting him to cancel the policy and alleged the agent had called defendants at their place of business on November 4, 1953, and was told by an employee that the defendants were asleep but could be reached at 2 p. m.; that when the agent called at about 1:30 they had left for Kansas City and en route were involved in the automobile collision; that when the agent advised Mary of the cancellation no part of the premium had been paid by the defendants.

The plaintiff further admitted it had advised defendants it was undertaking the defense of certain actions filed against defendants on January 12, 1954, as a result of the automobile collision, but alleges defendants were served by a deputy sheriff and not by letter with a notice of this defense on February 8, 1954; in answer to defendants' cross petition plaintiff alleged as a further defense that the policy was procured by the same fraudulent statements of fact alleged in plaintiff's petition.

At the close of the opening statement defendants demurred to the opening statement and the pleadings. This was overruled. At the close of plaintiff's evidence defendants' demurrer to it was overruled and plaintiff's demurrer to the evidence in support of defendants' cross petition was overruled.

The trial court at the request of the parties made findings of fact that the policy was issued and paid for; that plaintiff's agent learned from the agent for another company that such agent's company would not write insurance for defendants; that on October 18, 1953, the agent asked Walter questions from a blank form, took down the answers in pencil and later wrote answers on a typewriter; later the same day he delivered the policies to defendants and sent the form with the answers to the home office of plaintiff; that the blank contained questions and answers as follows:

"1. Describe any restrictions or convictions entered on Driver's License of any driver of the described vehicle. None.

"2. Has Driver's License of applicant or any driver ever been revoked? NO. If so, give name and explain.

"3. Is applicant or any driver now or in past been required to file evidence of insurance in connection with Motor Vehicle Responsibility Law in any state? NO. If so, give name, date and state.

"4. Has applicant or any driver ever been denied insurance or has any Company ever cancelled any insurance policy? If so, explain. Not to my knowledge.

"5. Has applicant or any driver made claim for any loss or been in any accident within the past five years? NO. If so, give details.

"6. Has applicant or any driver ever been arrested for careless, reckless, or drunken driving? NO. If so, give details.

"7. Has applicant or any driver any physical deformity, defect in eyesight or hearing? None. If so, explain. Either of them.

"8. With what company did applicant carry insurance the past year? I believe he said (Some Stock.) Hussey's as I remember.

"9. Has applicant or any driver taken and passed an automobile driver's training course at an accredited school? If so, give name and address of the school. No school (Hiway Patrol.) Each Year. Then get an (O. K.) Sticker to place on windshield.

"10. If applicant has lived at address shown, for less than one year, give address for previous 12 months. Been at this address for 5, and 1/2 years.";

that on October 21 the underwriter for plaintiff approved the issuance of the policy; that plaintiff did not discover the falsity until November 2, 1953, and on November 3 informed its general agent in Kansas City to cancel the policy; the agent in Kansas City received this notice on November 3rd and within twelve minutes advised its Topeka agent the home office requested a cancellation of the policy; that this was received in Topeka on November 3rd, at 4:32 p. m., but was not delivered to the agent until that night; that he tried to reach defendant by telephone but was told about 2 o'clock in the afternoon they had left town; that afternoon defendants were involved in an accident with the car named in the

policy; on November 5, the agent received a check for the amount of the premium signed by Mary and dated November 1, 1953; that on November 9, before any of its agents had discussed the collision with the driver of the other car the plaintiff served on Mary a notice of non-waiver and reservation of rights and advised defendant Mary that it did not by investigating the accident waive any of its rights; that on November 16 the plaintiff before any of its agents discussed the collision with Walter or any of the occupants of the other car served a copy of the above notice on Walter; that on November 27 plaintiff by its attorneys mailed to defendants a notice again advising them of the plaintiff's intention to cancel the policy; on November 30, 1953, the envelope containing the check was delivered by a United States postman to Mary, who refused to accept the envelope; and that this action was commenced on December 5, 1953. Since that time three damage suits were filed against the Burgens to recover damages on account of the accident in which the car was involved. They were all filed on January 2, 1954, and were still pending. Counsel for the Burgens after the action to cancel the policy and the three damage suits were filed wrote a letter to the home office of the plaintiff demanding that the plaintiff defend the damage suits. On January 27, 1954, counsel for the defendants wrote the plaintiff in part as follows:

"We wrote you under date of January 14 in the above matters. Since we have not heard from you we are interpreting your silence to mean you are not going to defend these cases. Accordingly, we are this day undertaking the defense of these actions and you are advised that at the conclusion of these matters Mr. Burgen will expect you to reimburse him for attorney fees paid us.

"We realize the predicament your company finds yourself in in this particular instance and we want to assure you that although there is a difference of opinion between our client and yourself, we respect your position in this matter and we will do everything in our power to assist you in disposing of these claims. This, of course, is based on the premises that you will want to dispose of them after the disposition of the suit which is now pending by you against Mr. Burgen."

Under date of February 9, 1954, present counsel for the defendants wrote to the plaintiff, in which he stated:

"We were served with what was purported to be a reservation of rights by your counsel in the above entitled matters. We are not abiding by nor are we accepting this reservation of rights. It is our contention that if you, by and through your counsel, move in and make any efforts to defend these cases you are waiving any defenses you have whereby you claim there is no insurance coverage afforded the defendants.

"We further must advise you that whenever your counsel files their motions that we shall immediately withdraw and hand these matters to you for your complete defense and payment of any and all judgments rendered against the Burgens."

That on February 8, 1954, the sheriff of Shawnee county served on the defendants and their counsel a notice of non-waiver and reservation of rights; that in each of the three damage suits counsel for plaintiff on February 11, 1954, filed a motion for additional time to plead; that this is the first time in which any request of any kind was made by the present counsel for plaintiff in those cases. Since that time additional pleadings in the way of answer and amended answer have been filed by present counsel. The court made conclusions of law as follows:

"I.

"The policy issued to the defendants by the plaintiff's agent, Paul Lyttle, was procured for the defendants by the defendant, Walter S. Burgen, by his making and stating to the said Paul Lyttle false and material statements of fact upon which the plaintiff's agent, Lyttle, relied to the detriment of the plaintiff by issuing and delivering said policy to the defendants; that such information given to plaintiff's agent was known by the Burgens to be false and untrue; that the plaintiff relied upon such information to its damage; and that said policy should be and the same is hereby cancelled.

"II.

. "The premium check for $106.81 should be returned by the plaintiff to the defendants.

"III.

"The plaintiff, by its action through its counsel in defending the three damage suits brought against the defendants, is not estopped to deny liability under the policy sought to be cancelled in this case, nor has the plaintiff waived its right by such defense in the damage suits to maintain this action to cancel the policy.

"IV.

"The plaintiff should have judgment for its costs."

The final judgment of the court was that the policy of insurance issued to the defendants be canceled and plaintiff deliver to the clerk of the court for delivery to defendants the premium check of $106.80.

The defendants' motion to make additional findings of fact and a motion for a new trial on account of erroneous rulings of the court; the verdict and decision is contrary to the evidence; for newly discovered evidence which the defendants could not with due diligence have discovered and produced at the trial and that the judgment is contrary to the law were denied—hence this appeal.

The specifications of error are that the court erred in overruling defendants' motion for judgment; in making its finding of fact; in its conclusions of law; in overruling defendants' motion for a new trial; in ruling that plaintiff was not estopped by its actions in investigating and defense of actions pending in the District Court of Shawnee county against the Burgens, after it learned of the fraud and in ruling that the insurance company could defend said actions over the objection of the Burgens.

Defendants state the question to be whether the insurer is estopped to deny coverage under an automobile liability policy when it continues with the defense of an action against its assured after the refusal of such insured to allow insurer to proceed with the defense under a reservation of rights motion. This question is not quite accurate.

All parties concede the insurer had a right under the circumstances to cancel the policy. This lawsuit is here because of a peculiar series of fortuitous circumstances where the home officers of the company decided it desired to cancel the policy and proceded with reasonable diligence to notify the insured of its intention to cancel, and the collision causing the contingent liability occurred while the agent of the insurer was attempting to notify the insured of its intention to cancel.

All parties agree that when confronted with such a situation, where it runs the risk of a judgment against it, if it does not defend, and of estoppel if it does, the insurer may serve a notice on the insured that it will assume defense of the action but clearly disclaim liability under the policy. Counsel for defendants state in their brief here, the question evolves around the effect of a reservation of rights notice, which was not consented to or acquiesced in by the defendants. This is not quite a fair statement. The trouble with defendants' position is the trial court found no action by way of defending the three pending lawsuits was taken by the insurer until February 11, 1954, when it filed a motion for time to plead. It had already served on defendants and their counsel waiver of rights notices. On January 14, 1954, counsel for defendants had in a letter demanded that plaintiff defend the damage suits.

Under all the surrounding facts and circumstances the rule stated in *Snedker v. Derby Oil Co., Inc.*, 164 Kan. 640, 192 P. 2d 135, is in point. There we in dealing with an analogous situation said:

"It will be noted that under the general rule a liability insurer which assumes

the defense of an action against the insured may save itself from the bar of waiver or estoppel in a subsequent action upon the policy if, in the action against the insured, it clearly disclaims liability under the policy, and gives notice of its reservation of a right to set up the defense of noncoverage."

Such is undoubtedly the general rule.

Authorities cited by defendants have been examined by us and found not to be controlling under the facts and circumstances of this case.

The judgment of the trial court is affirmed.