No. 55,460

CHRISTOPHER BELL, *et al., Appellants,* v. RUSSELL WAYNE TILTON, *et al., Defendants,* and GREAT PLAINS MUTUAL INSURANCE COMPANY, INC., *Garnishee-Appellee.*

(674 P.2d 468)

Opinion filed December 2, 1983.

*C. Stanley Nelson,* of Hampton, Royce, Engleman & Nelson, of Salina, argued the cause and was on the brief for appellants.

*Robert S. Jones,* of Norton, Wasserman, Jones & Kelly, of Salina, argued the cause and was on the brief for garnishee-appellee.

The opinion of the court was delivered by

McFARLAND, J.: Plaintiff-garnisher Christopher Bell appeals dismissal of his garnishment action against garnishee Great Plains Mutual Insurance Co., Inc.

The background facts as found by the trial court are summarized as follows:

Great Plains Mutual Insurance Company issued its homeowners policy No. H-1-331-2 to Rodney and Katherine Tilton which generally provided liability limits of $25,000.00 for bodily injuries or property damage caused by a covered occurrence. Defendant, Russell Wayne Tilton (Rusty), is the son of Rodney and Katherine Tilton, and was an insured under the terms of the

insurance policy. Coverage under the policy was limited by Exclusion (1)(f) which provided as follows: "This policy does not apply . . . f. to bodily injury or property damage which is either *expected or intended from the standpoint of the insured.*" (Emphasis supplied.)

On January 26, 1979, Chris Bell and Dion Gengler spent the night with Rusty Tilton at his rural home in celebration of his birthday. Each of the boys was eleven years old. The following morning after breakfast and some normal scuffling around, the boys took Rusty's BB gun and went bird hunting. The BB gun, though a toy, was powerful enough to kill birds. Rusty had been taught by his father how to handle guns, including the dangers inherent in gun handling, and he had successfully completed the basic hunter safety course which taught the art of safe gun handling. After lunch, the three boys and Rusty's sister, Leslie, went to the barn to play. Rusty took his BB gun along. The barn is a two-story rock structure. The second story or hayloft was reached by a stairway inside the barn leading to a trap door in the loft floor. There is a hay door about four feet by six feet in the front of the barn through which to load hay into the loft. The children all went into the hayloft and there was shooting of the BB gun. The evidence is conflicting as to whether Rusty was actually shooting the gun directly at the other two boys, but there was at least some play acting to that effect.

After a while, Rusty left the hayloft to go to the house and he apparently got some more BBs. When he left, Chris and Dion closed the trap door to the loft and piled various objects onto it so that Rusty could not get it open again from below. Rusty shot some BBs at the trap door when he could not get it open and also fired a few at a crack in the loft floor. He then went outside and shot some BBs into the open hay door. At one point he tried to place a ladder to the hay door to enter the loft, but the other boys prohibited his entry. He then put the ladder down and resumed shooting through the hay door from just below the door. Rusty then stationed himself at a shed which was across the driveway from the barn and was approximately thirty feet from the hay door. He resumed shooting BBs through the open hay door. A "game" developed whereby Chris and Dion would run across the open hay door inside the loft and [Rusty] fired the BB gun into the door and apparently at the running boys. This routine went on for a period of time but with no "hits" taking place on the boys. Ultimately, Chris peeked around the side of the hay door opening. Rusty saw Chris, took aim and fired the BB gun at him. The BB pellet hit Chris in the right eye, causing severe injury. About three months earlier, Rusty had fired the BB gun at Chris and a pellet struck Chris' cheek. Although it hurt, Chris was not injured.

This action was filed on April 22, 1981, and a jury trial began on January 11, 1982. The trial was conducted upon a theory of negligence, the issue of intentional fault having been abandoned by the plaintiff. At the conclusion of their deliberations, the jury returned their verdict finding Russell Tilton to be 56% at fault and Chris Bell to be 44% at fault for Chris' injuries. (The judgment against Russell Tilton was $30,800.00.) No fault was assessed to Rusty's parents, Rodney and Katherine Tilton. Plaintiff filed this garnishment proceeding against Great Plains Mutual Insurance Company claiming under the Tilton's homeowners policy.

The trial court then concluded the circumstances of plaintiff's injury came within the "expected or intended" exclusion of the Tilton policy and, accordingly, garnishee insurance company had no liability thereon. The garnishment was dismissed and, based upon lack of policy liability, the claim for attorney fees was denied.

The first issue is whether the trial court erred in failing to find garnishee insurance company was estopped to assert its policy exclusion.

Before proceeding, some additional facts need to be stated. After plaintiff Bell filed his personal injury action against defendants Tilton, demand was made upon the insurance company herein to defend the action. The Tiltons also retained their own counsel. The insurance company provided an attorney (Robert S. Jones) for the Tiltons' defense of the action but, by letter to the Tiltons' privately retained attorney (Thomas H. Conroy), stated:

"I want to make it clear we will, on behalf of the Company and Mr. and Mrs. Tilton, defend this entire lawsuit, including the claims against Rusty, individually, *so long as you clearly understand that by doing so, the Company does not waive any rights it has set forth in this letter to disclaim and deny the obligations to pay judgment rendered for those claims I have discussed which are against Rusty personally for his alleged willful, negligent and reckless act in shooting Chris Bell in the eye with a BB.*" (Emphasis supplied.)

Mr. Conroy, on behalf of the Tiltons, replied:

"We understand you do not waive any rights set forth in said letter to disclaim and deny the obligation to pay judgments rendered for the claims you described which are against Rusty personally for his alleged willful, negligent and reckless acts in shooting Chris Bell in the eye with the BB."

Plaintiff's original action against the Tiltons predicated liability on both negligence and intentional tort theories. Subsequently, plaintiff dropped his intentional contention and relied solely on negligence. Before trial Mr. Jones, on behalf of the Tiltons, filed a motion in limine seeking to preclude the plaintiff from making any mention at trial of Rusty Tilton's intent at the time of the shooting. At the hearing on the motion in limine on January 7, 1982, plaintiff's attorney, Mr. Nelson, expressed concern in light of some answers by defendants to interrogatories, whether the plaintiff should amend his petition and reinsert an allegation of intentional and willful conduct. After a heated exchange between counsel, the court assured Mr. Nelson the

Tiltons would not claim Rusty's actions were intentional, rather than negligent. In other words, the matter of intent was not in the lawsuit. The trial went ahead on plaintiff's negligence theory and the jury returned an award of $55,000.00 for plaintiff but found him 44% at fault for an effective judgment of $30,800.00.

When Great Plains was subsequently garnished by plaintiff, the insurance company hired Mr. Jones to represent it on the garnishment. In its answer, Great Plains asserted it was not indebted to Rusty Tilton under its insurance policy as his injury to plaintiff had been intentional and in defending the Tiltons in the Bell lawsuit the garnishee had timely reserved its right to disclaim liability.

Plaintiff argued Great Plains was estopped to assert the policy exclusion defense as Mr. Jones, in the Bell litigation, had waived it at the January 7, 1982, pretrial hearing. On October 16, 1982, Judge Richard W. Wahl, who had also been the trial judge in the initial litigation, found the garnishee was *not* estopped to assert its policy exclusion defense. In his memorandum decision Judge Wahl wrote:

"The garnishee now before the Court was not a party to the trial of the issues. The theory of the case was determined by the plaintiff to be negligence. The issue of intentional conduct by Russell Wayne Tilton to inflict injury upon Christopher Bell by shooting him in the eye with the BB gun has never been before the Court."

Continuing:

"The issue of coverage was not adjudicated at the prior proceeding and the garnishee is now free to assert its non-coverage defenses. There is not an identity of parties between the trial on a negligence theory and the present garnishment. The issue of coverage not having been before the Court, both res judicata and collateral estoppel are precluded. *Earl v. Thompson, et al.,* 128 Ill. App. 2d 32, 262 N.E.2d 320 (1970)."

Concluding:

"Nor does the active participation of insurance counsel in the defense of the negligence action change the result. The theory of the action was chosen by the plaintiff, not defendant, to be negligence. It is not disputed that the garnishee did notify its insured, Tilton, that it was reserving its policy defenses. Tilton retained private counsel. This cannot be held to estop the garnishee from pursuing its policy defenses. *Earl v. Thompson, et al.,* supra; *Hensley v. Hartford Accident & Indemnity Company,* 451 S.W.2d 415 (Ky. 1970); *Cowan v. Insurance Company of North America,* 22 Ill. App. 3d 883, 318 N.E.2d 315 (1974)."

We agree with the trial court's conclusions and rationale.

In *Fisher v. Firemen's Fund Indemnity Company*, 244 F.2d 194 (10th Cir. 1957), a case applying Kansas law, defendant insurance company had written a liability policy for a partnership. The policy provided coverage for employee use of a partnership motor vehicle if the partnership had given the employee permission to use the vehicle. One of the partnership employees, Mr. Rumpf, was allowed to take a truck to Udall, Kansas. Without permission, Mr. Rumpf drove the truck into Oklahoma, a substantial detour, and was involved in an accident with plaintiff. Defendant insurance company contended it was not liable to plaintiff and brought a declaratory judgment action to establish nonliability. Defendant argued it was not liable as its policy did not cover nonpermissive use of partnership motor vehicles and at the time of the accident Mr. Rumpf was in Oklahoma, far off his permitted route. In *Fisher* plaintiff asserted defendant insurance company could not deny liability as its attorneys had appeared and defended Mr. Rumpf in the initial litigation. In rejecting this theory, the Tenth Circuit Court of Appeals commented:

"Appellants make one further contention requiring our disposition. Attorneys for the insurance company have appeared and defended on behalf of Rumpf several actions arising from the Oklahoma collision in which appellants appear as parties. Before making any such appearance the insurance company agreed in writing with Rumpf that all policy rights and defenses were expressly reserved by the insurance company. Appellants assert that under the law of Kansas such a reservation of rights agreement is not effective for its stated purpose unless the existence of such agreement is revealed at the trial and to all parties. Appellants cite Snedker v. Derby Oil Co., Inc., 164 Kan. 640, 192 P.2d 135, and Bean v. Gibbens, 175 Kan. 639, 265 P.2d 1023, as support for their assertion. We do not read these cases as so holding. Rather we believe Kansas [is] in accord with the general rule that *an insurance company before undertaking the defense of a person claiming to be an insured under the policy may, by proper notice to such person and without notice to claimants asserting a cause of action against such person, reserve the right to question coverage and assert policy defenses. Such disclaimer of liability under the policy effectively bars a claim of waiver or estoppel based upon the company's defense of the cause of action.* Iowa Hardware Mutual Insurance Co. v. Burgen, 178 Kan. 557, 290 P.2d 1034; Myers v. Ocean Accident & Guarantee Corp., 4 Cir., 99 F.2d 485." 244 F.2d at 196. (Emphasis supplied.)

The mere fact an insurance company retains an attorney to represent an insured against a lawsuit does not mean the attorney is also the insurance company's attorney capable of binding the insurance company. In *Hensley v. Hartford Accident & Indemnity Company*, 451 S.W.2d 415 (Ky. 1970), plaintiff con-

tended because a company lawyer had participated in the insured's defense at the initial trial the insurance company had waived its right to disclaim liability under the policy. In rejecting this contention, the Kentucky Court of Appeals (then Kentucky's highest court) observed:

"The plaintiff cites a number of authorities which consider the question of waiver and estoppel asserted by the insured against his insurance company. That problem is not involved here.

"The insured had no claim and has made no claim against the company. He was timely notified of the probable lack of coverage and the company reserved all of its rights to disclaim liability for any judgment against him. We know of no theory on which the plaintiff could have acquired any rights against the company. *Surely an insurance company lawyer can appear in the courtroom defending an accident claim against an insured without committing the company to pay the judgment.* The representation of the insured by the company lawyer in the present case may have given the plaintiff cause for hope that there was insurance coverage. Such hope does not create a cause of action.

"There was no waiver or estoppel." 451 S.W.2d at 416. (Emphasis supplied.)

See also Annot., 38 A.L.R.2d 1148.

Stronger than *Hensley* is *Earl v. Thompson*, 128 Ill. App. 2d 32, 262 N.E.2d 320 (1970), also relied on by the court below. In *Earl* plaintiff obtained a $25,000.00 judgment against Mr. Thompson for an assault—an intentional tort. Plaintiff then, like here, brought a garnishment action against defendant's insurer, La Salle Casualty Company. The garnishee answered it was not liable as its insurance policy carried an assault and battery endorsement. Plaintiff moved to strike the garnishee's answer, drawing to the trial court's attention answers to interrogatories it had propounded to defendant in the initial litigation where Mr. Morton Meyer, an attorney retained by La Salle to represent defendant in the lawsuit, had said defendant was covered by the insurance policy. 128 Ill. App. 2d at 34. Plaintiff alleged the insurance company was now "estopped from denying the validity and truth" of its answers to the interrogatories. In response, garnishee alleged before trial of the assault suit it had sent a letter to plaintiff's attorney informing him the insurance company afforded no liability coverage for the incident because of the exclusion contained in the policy for assaults and batteries. 128 Ill. App. 2d at 35. Further, the garnishee had assumed defense of the assault suit pursuant to a reservation of its rights under the policy. 128 Ill. App. 2d at 35. The trial court entered judgment for the plaintiff against the garnishee and the latter

appealed. In reversing, the Illinois Court of Appeals commented:

"We are of the opinion that garnishee is free to assert its noncoverage defenses, since the issue of coverage was not adjudicated in the prior proceeding.

"In addition, the principle of res judicata is inapplicable because there is not an identity of parties in the two causes. *While it may be true that the attorney who represented defendants in the injury action had been retained by La Salle Casualty, it is a non sequitur to conclude, as plaintiff does, that La Salle Casualty was thus the 'real party in interest' in both suits.* See Sobina v. Busby, 62 Ill. App. 2d 1, 210 N.E.2d 769. The doctrine of res judicata is applicable only where the former suit was between the same parties or their privies, and then only as to questions which were, or might properly have been litigated. City of Peoria v. Peoria City Lines, Inc., 24 Ill. 2d 457, 461, 182 N.E.2d 164. Here, *the difference in parties renders the doctrine inapplicable to the instant action. So also does the difference in issues. The prior ruling relied on by plaintiff was preliminary or ancillary to the pending trial in the injury suit. The issue of coverage was not before the court, thereby precluding not only res judicata but estoppel by verdict as well. In fact, any attempt to offer evidence on that issue would have been clearly inadmissible.* See Welborn v. Illinois Nat. Cas. Co., 347 Ill. App. 65, 69, 106 N.E.2d 142; and Gould v. Country Mut. Cas. Co., 37 Ill. App. 2d 265, 283, 185 N.E.2d 603." 128 Ill. App. 2d at 36-37. (Emphasis supplied.)

See also *Gray v. Zurich Insurance Co.,* 65 Cal. 2d 263, 279, 54 Cal. Rptr. 104, 419 P.2d 168 (1966).

Although plaintiff argues vigorously to the contrary, the mere fact the insurance company hired the same attorney (Mr. Jones) to represent the Tiltons in the personal injury action and to represent itself in the subsequent garnishment is not significant in determining this issue.

We conclude the trial court did not err in determining the insurance company was not estopped to assert the policy exclusion as a defense to the garnishment.

The second issue on appeal is the propriety of the trial court's determination plaintiff's injury came within the policy's "expected or intended" exclusion. The parties agree the burden was on the insurance company to prove the applicability of the exclusion.

Our initial determination is the appropriate scope of appellate review. Plaintiff contends *Stith v. Williams,* 227 Kan. 32, 605 P.2d 86 (1980), permits this court de novo review of the trial court's findings of fact. In *Stith* we declared:

"When a case is submitted to the trial court on an agreed stipulation of facts and documentary evidence, this court is afforded the same opportunity to consider

the evidence as the trial court. *Crestview Bowl, Inc. v. Womer Constr. Co.*, 225 Kan. 335, 592 P.2d 74 (1979)." Syl. ¶ 1.

"Where the controlling facts are based upon written or documentary evidence by way of pleadings, admissions, depositions and stipulations, the trial court has no peculiar opportunity to evaluate the credibility of witnesses. In such situation, this court on appellate review has as good an opportunity to examine and consider the evidence as did the court below, and to determine *de novo* what the facts establish." 227 Kan. 32, Syl. ¶ 2.

However, as *In re Estate of Broadie*, 208 Kan. 621, 493 P.2d 289 (1972), observed, de novo review is only allowed when "no oral testimony [has] been heard" by the district court. 208 Kan. at 624. In the instant garnishment proceeding, oral testimony *was* heard, consequently *Stith* is inapplicable.

Having determined de novo review is not available herein, what is the proper scope of review? Where a trial court has made findings of fact and conclusions of law, the function of an appellate court is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. *In re Estate of Phillips*, 4 Kan. App. 2d 256, 261, 604 P.2d 747, *rev. denied* 227 Kan. 927 (1980); and *City of Council Grove v. Ossmann*, 219 Kan. 120, 546 P.2d 1399 (1976). It is not the function of an appellate court to weigh conflicting evidence, pass on the credibility of witnesses, *English Village Properties, Inc. v. Boettcher & Lieurance Constr. Co.*, 7 Kan. App. 2d 307, Syl. ¶ 2, 640 P.2d 1282, *rev. denied* 231 Kan. 799 (1982), or redetermine questions of fact. Where a trial judge, sitting as a trier of facts, makes a specific finding of fact on apparently conflicting or actually conflicting evidence, an appellate court is concerned only with evidence that supports the trial court's findings and not with evidence that might have supported contrary findings. *Steele v. Harrison*, 220 Kan. 422, Syl. ¶ 1, 552 P.2d 957 (1976); *Arnette v. Arnette*, 162 Kan. 677, 681, 178 P.2d 1019 (1947); and *In re Estate of Phillips*, 4 Kan. App. 2d at 261-62. In other words, an appellate court searches the record for the purpose of determining whether there is any substantial competent evidence to support the findings and verdict. If so, the appellate court will not weigh the evidence. Findings of fact determined on conflicting evidence are conclusive. *Winn v. Sampson Construction Co.*, 194 Kan. 136, 142, 398 P.2d 272 (1965). See also *Klinzmann v. Beale*, 9 Kan. App. 2d 20, Syl. ¶ 10, 670 P.2d 67 (1983).

Substantial competent evidence has been defined as evidence possessing something of substance and relevant consequence and which furnishes substantial basis of fact from which issues can reasonably be resolved. *Rush v. King Oil Co.*, 220 Kan. 616, 618, 556 P.2d 431 (1976). Even if findings of the trial judge appear to be inconsistent, the decision of the trial court may be sustained on the basis of those findings which allow the conclusion reached by the court below, if they are supported by the evidence. *Landrum v. Taylor*, 217 Kan. 113, 117, 535 P.2d 406 (1975); and *In re Estate of Phillips*, 4 Kan. App. 2d at 262.

In holding the exclusion was applicable to the circumstances herein, the trial court stated:

"There is conflicting testimony from the boys as to what was intended in the 'game' they were playing. Certainly no one suggests that Rusty intended to shoot Chris' eye out. There is considerable testimony that he had been shooting at the other boys [Chris and Dion] and that he intended to hit one of the boys to sting them. But wholly aside from his direct intent to have a BB strike Chris' body, Rusty must be held to have known that his BB gun could inflict severe injury and that to shoot indiscriminately into the loft as Chris and Dion ran past the opening, presented a very real probability that he would eventually hit one of them. He knew that when he shot at Chris' face as Chris peered around the side of the loft opening that a hit to Chris' face would hurt him. He intended to discharge the BB toward Chris' face and therefore it must be inferred that Rusty intended the natural and probable consequences of that act. That the pellet hit Chris' eye was a result and an injury which were well within the natural flow of events after the intentional shot. Rusty should have expected an injury to result from his conduct.

"It avails Chris nothing whether Rusty is held to intend the natural and probable consequences of his intentional acts, or, having fired the BB with the intent merely to sting Chris, Rusty be held to have intended the injury of greater degree which Chris sustained. The evidence and the law support either approach, and each relieves the insurance company of coverage under its policy."

In essence, plaintiff argues because Rusty Tilton testified in his deposition he did not have the specific intent to injure plaintiff's eye when he fired the BB gun at plaintiff's face, then the injury is not as a matter of law "intentional" within the meaning of the policy exclusion. We do not agree.

Factually, the closest Kansas case to the instant litigation is *Casualty Reciprocal Exchange v. Thomas*, 7 Kan. App. 2d 718, 647 P.2d 1361, *rev. denied* 231 Kan. 799 (1982). In *Casualty* Mr. Thomas had an insurance policy which excluded bodily injury which was either expected or intended from the standpoint of the insured. During an altercation in Mr. Thomas' driveway, Mr.

Thomas shot a Mr. James Warden. Casualty sought and obtained a declaratory judgment it was not liable under its policy with Mr. Thomas to Mr. Warden as Mr. Thomas' act had been intentional. In affirming the granting of declaratory judgment the Court of Appeals observed there is no duty on the part of an insurer to indemnify under a policy if the policy does not provide coverage for the occurrence. 7 Kan. App. 2d at 720. The court summarized Kansas law on the issue before us as follows:

"The [trial] court concluded, based on *Rankin v. Farmers Elevator Mutual Insurance Company*, 393 F.2d 718 (10th Cir. 1968), that appellant's injuries were intentionally caused by Thomas and thus there was no coverage under the policy. The essence of the appellant's argument here is that there was no evidence that Thomas intended to injure the appellant by his actions, citing *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 212 Kan. 681 [, 512 P.2d 403 (1973)], for the proposition that an unintended injury resulting from an intentional act would be covered. In *Spruill*, the defendants were towing away plaintiff's pickup truck. Plaintiff attempted to stop them and alleged that in the process defendants drove over his foot. There the court indirectly recognized that an intentional act may result in an unintentional injury by saying that the intentional act of taking possession of the truck did not cause the injury, rather the cause was the manner in which the truck was being moved.

"The facts there are distinguishable from this case, where here one person aimed a gun at another and fired it. Under these facts, *to say that the act of aiming and firing the gun was intentional, but the injury was not, draws too fine a distinction. The better rule is found in Rankin, where it was held that where an intentional act results in injuries which are a natural and probable result of the act, the injuries are intentional.*

"This result follows from the well-established presumption in both tort and criminal law that persons are presumed to intend the natural and probable consequences of their actions. See Prosser, Law of Torts § 8 (4th ed. 1971); Restatement (Second) of Torts § 8A, comment (b); 86 C.J.S., Torts § 20; and PIK Crim. 54.01." 7 Kan. App. 2d at 720-21. (Emphasis supplied.)

Concluding:

"We believe that a liability policy provision excluding coverage for injuries expected or intended from the standpoint of the insured would exclude from coverage an injury in which it was shown that the insured injured another by aiming and firing a pistol at the injured person at close range, where there is no evidence offered in explanation that the insured had not intended or expected the injuries." 7 Kan. App. 2d at 721.

The facts distinguishing *Casualty* from the instant action are the age of the parties and that in one a pistol was used while in the other a BB rifle was employed. While admittedly a BB rifle is not regarded as a firearm, *Capps v. Carpenter*, 129 Kan. 462, 463, 283 Pac. 655 (1930), as the instant litigation reveals, the BB rifle is

capable of hurtling a projectile with sufficient force to penetrate an eye and cause severe injury.

Numerous cases have addressed the matter of intent with regard to insurance policies which exclude coverage for intentional torts. Two are included herein. In *Clark v. Allstate Insurance Company,* 22 Ariz. App. 601, 529 P.2d 1195 (1975), relied on by the district court in the instant garnishment action, Elbert H. Clark, Jr., was covered by an insurance policy of his parents. The policy contained an exclusion for bodily injury or injury to or destruction of property caused feloniously or intentionally by or at the direction of an insured. 22 Ariz. App. at 602. One day at high school Elbert tapped another student, Jeffrey E. Niemi, on the back. As Jeffrey turned, Clark struck him in the face. Clark, like Rusty Tilton here, stated he did not intend to hurt Jeffrey with his blow, though he did intend to hit him in the face with a short jab. 22 Ariz. App. at 602. Jeffrey Niemi sued the Clarks. Allstate then brought a declaratory judgment action seeking to be held not liable as an insurer as the injury inflicted upon Jeffrey Niemi was the result of an intentional tort. The trial court granted Allstate's declaratory judgment and the Arizona Court of Appeals affirmed. In so doing the Arizona appellate court commended:

"We find it unnecessary to proceed any further as to appellants' remaining arguments. The contention of young Clark that he did not intend to injure Niemi does not make the question of intention an issue of material fact which must go to the trier of fact. Perhaps if Clark maintained that striking Niemi was an accident, and that the blow itself was unintentional, summary judgment would be improper due to the dispute over a material fact. However, *the act of striking another in the face is one which we recognize as an act so certain to cause a particular kind of harm that we can say a person who performed the act intended the resulting harm, and his statement to the contrary does nothing to refute that rule of law."* 22 Ariz. App. at 602. (Emphasis supplied.)

In the instant action, instead of striking plaintiff in the face with a fist, Rusty hit him with a BB pellet which was more readily capable of penetration than a fist. As in *Clark,* the act of shooting another in the face with a BB pellet is one which is recognized as an act so certain to cause a particular kind of harm it can be said an actor who performed the act intended the resulting harm, and his statement to the contrary does nothing to refute that rule of law.

*State Farm Fire & Cas. Co. v. Muth,* 190 Neb. 248, 207

N.W.2d 364, *modified* 190 Neb. 272 (1973), not only involved a minor firing a BB rifle but involved interpretation of an insurance policy exclusion clause the same as here—"This policy does not apply . . . to bodily injury or property damage which is *either expected or intended from the standpoint of the insured.*" 190 Neb. at 249. (Emphasis supplied). While affirming the trial court judgment against the insurance company, the Nebraska Supreme Court held:

"[U]nder the language of the exclusion in question, an injury is either expected or intended if the insured acted with the specific intent to cause harm to a third party. It seems to us to be immaterial whether the injury which results was specifically intended, i.e., the exclusion would apply even though the injury is different from that intended or anticipated." 190 Neb. at 252.

Under the "expected or intended from the standpoint of the insured" policy exclusion language, it was not necessary for the garnishee insurance company to show Rusty Tilton specifically intended to strike Christopher Bell in the eye with a BB pellet in order to deny liability. Rather, if from the acts, circumstances, and inferences of the case, it appeared Rusty Tilton had the desire to cause the consequences of his acts or he believed the consequences were substantially certain to result, his conduct was intentional and the policy exclusion was operative.

There was substantial, competent evidence before the trial court to support its finding that the act of Rusty Tilton in shooting Christopher Bell was intentional. Consequently, the trial court did not err in entering judgment for the garnishee and in dismissing the garnishment action.

For his third issue plaintiff contends the trial court erred in not awarding attorney fees to him based on K.S.A. 40-256. Said statute provides in all actions commenced in which judgment is rendered against any insurance company, if it appears from the evidence that such company has refused without just cause or excuse to pay the full amount of such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as attorney fees for services in such action to be recovered and collected as part of the costs. Our previous conclusion the trial court did not err in entering judgment in favor of the insurance company disposes of this issue as well. Obtaining a judgment against an insurance company is a condition precedent to any

consideration of award of attorney fees under authority of K.S.A. 40-256.

For his final issue plaintiff contends the garnishee insurance company is guilty of bad faith in not settling within the policy limit and is liable for the portion of the judgment which is in excess of the $25,000.00 policy limit. This issue also is disposed of by the prior determination the trial court did not err in finding no coverage was provided for the incident in question. Additionally, only the insured may challenge its carrier for an alleged refusal to settle. See *Bollinger v. Nuss*, 202 Kan. 326, 449 P.2d 502 (1969), and *Rector v. Husted*, 214 Kan. 230, 519 P.2d 634 (1974).

The judgment is affirmed.