NOT DESIGNATED FOR PUBLICATION

No. 126,382

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BUILDING ERECTION SERVICES COMPANY, INC.,
*Appellant*,

v.

WALTON CONSTRUCTION COMPANY, INC.,
*Appellee.*

MEMORANDUM OPINION

Appeal from Johnson District Court; ROBERT J. WONNELL, judge. Oral argument held October 15, 2024. Opinion filed December 6, 2024. Affirmed in part, vacated in part, and remanded with directions.

*R. Scott Beeler*, of Rouse Fret White Goss Gentile Rhodes PC, of Leawood, *Carrie E. Josserand*, of Lathrop GPM LLP, of Kansas City, Missouri, and *Kurt S. Brack*, of Brown & Ruprecht, PC, of Kansas City, Missouri, for appellant.

*Danne W. Webb*, of Horn Aylward & Bandy, LLC, of Kansas City, Missouri, for appellee.

Before CLINE, P.J., MALONE and SCHROEDER, JJ.

PER CURIAM: Building Erection Services Company, Inc. (BESCO) timely appeals for the fourth time in this construction saga over defects in the late 1990s renovation of the University of Kansas' (KU) football stadium press box that no longer exists. BESCO, in this appeal from the district court's award of damages and attorney fees to Walton Construction Company, Inc. (Walton), asserts the district court's award failed to comply with the prior appellate court mandates. After an extensive review of the record, we affirm in part, vacate in part, and remand with directions.

1

FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background of this case is well known to the parties and is set out in the following cases: *Building Erection Services Co. v. Walton Constr. Co.*, No. 100,906, 2009 WL 4639486, at *1 (Kan. App. 2009) (unpublished opinion) (*BESCO I*); *Building Erection Services Co., Inc. v. Walton Construction Co., Inc.*, No. 111,706, 2015 WL 4879075, at *1 (Kan. App. 2015) (unpublished opinion) (*BESCO II*); and *Building Erection Services Co. v. Walton Construction Co.*, No. 117,839, 2018 WL 3485670, at *1 (Kan. App. 2018) (unpublished opinion), *aff'd in part, rev'd in part, and vacated in part* 312 Kan. 432, 475 P.3d 1231 (2020) (*BESCO III*). In *BESCO III* our Supreme Court summarized the facts as follows:

> "In 1999, the University of Kansas (KU) built a new press box for its football stadium. Walton was the project's general contractor. Walton hired BESCO to install structural steel and the press box's glass curtain wall. The parties' relationship was memorialized in a subcontractor agreement, through which BESCO agreed to indemnify Walton against claims and losses related to BESCO's work.
>
> "Shortly after the press box was completed, KU discovered that the new construction leaked badly. Because of the leaks, KU withheld a more than $400,000 payment from Walton. Walton, in turn, did not pay BESCO the remaining $26,548.54 it was owed. During the ongoing dispute between KU and Walton, KU brought in an external engineering contractor to identify the source of the leaking near the press box's windows and propose solutions. This contractor produced the 'Slemmons report.' The report did not delve into subcontractor liability for the leaks but merely allocated responsibility between KU and Walton. The report found KU 10% responsible for the leaks, the architects 10% responsible, and Walton 80% responsible.
>
> "In 2002, BESCO sued Walton and KU to recover the $26,548.54 payment that was being withheld, thus beginning this trail of litigation.
>
> . . . .
>
> "After a bench trial, the district judge found that BESCO breached its contract with Walton when it failed to follow the correct shop drawings and used inadequate

screws for fastening. The district judge ordered BESCO to pay Walton over a million dollars, including the entire cost of the press box repairs and Walton's attorney fees. BESCO appealed. In [*BESCO I*], a Court of Appeals panel affirmed BESCO's liability to Walton for breach of contract but reversed and remanded the damages award for lack of substantial competent evidence.

"On remand, the district judge entered a new award of almost $900,000, accounting for all of Walton's and KU's attorney fees and half the cost of removing and replacing the press box's glass and metal panels. BESCO again appealed. In [*BESCO II*], a different Court of Appeals panel again reversed the amount of damages for lack of substantial competent evidence. Neither party petitioned for review of that decision.

"On remand for the second time, the district judge entered his third award. This time, he ordered BESCO to pay 85% of the cost of removing and replacing the metal panels, and 50% of the cost of removing and replacing the glass. Also, the district judge again ordered BESCO to pay the attorney fees that the Court of Appeals reversed in *BESCO II*, as well as further fees Walton accrued during the continuing litigation. BESCO appealed again. In [*BESCO III*], yet another panel of the Court of Appeals again reversed the damages award and attorney fee award for failure to abide by the law of the case and the mandate rule and lack of substantial competent evidence." *BESCO III*, 312 Kan. at 433-35.

On review, our Supreme Court

"[affirmed] the Court of Appeals' judgment insofar as it reversed the third award for failing to comply with the mandate rule. We vacate the portion of the Court of Appeals' opinion holding that the third award was not supported by substantial competent evidence. Finally, we reverse the Court of Appeals' decision to not remand the case, and we remand to the district court for entry of an award that complies with the mandates from *BESCO I* and *BESCO II*." *BESCO III*, 312 Kan. at 445.

On remand, the district court again entered judgment in favor of Walton, this time finding BESCO liable for 49% of the cost of removing the metal curtain wall and glass panels. Applying this percentage, the district court found BESCO was liable for 39.2% of Walton's total damages, as 20% of the total damages had previously been apportioned to

both KU and the project's architect equally. The district court also awarded Walton 39.2% of its requested attorney fees—including appellate attorney fees—based on the same general rationale. In total, the district court entered judgment in favor of Walton for $428,756.64—$208,318.36 in damages and $220,438.28 in attorney fees. Additional facts are set forth as necessary.

ANALYSIS

*The district court properly determined Walton's damages.*

BESCO argues the district court erred in apportioning the damages between Walton and BESCO, asserting the district court's fourth award failed to comply with the mandates of *BESCO I*, *BESCO II*, and *BESCO III*. Essentially, BESCO argues the district court could not apportion *any* damages related to the costs of removing the glass panels and metal curtain wall system because that was done to fix the water infiltration issues, which were caused by matters outside the scope of BESCO's work on the fasteners for the glass. This argument is illogical and generally inconsistent with our Supreme Court's discussion in *BESCO III*, 312 Kan. at 438. However, before delving further into the analysis, we must outline the applicable standard(s) of review.

As explained by the panel in *BESCO II*, to the extent the issue on appeal concerns the district court's *interpretation* of the controlling appellate court mandates, our review is unlimited. However, to the extent the issue relates to the district court's *implementation* of the mandate(s), we review the district court's decision for an abuse of discretion. 2015 WL 4879075, at *10. A judicial action constitutes an abuse of discretion if it is "(1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact." *In re Spradling*, 315 Kan. 552, 590, 509 P.3d 483 (2022). BESCO, as the party asserting the district court abused its discretion, bears the burden of showing such abuse of discretion. See *Bicknell v. Kansas Dept. of Revenue*, 315 Kan. 451, 466, 509 P.3d 1211

4

(2022). Insofar as resolution of this appeal requires us to interpret the parties' contract, it presents a question of law subject to unlimited review. *Trear v. Chamberlain*, 308 Kan. 932, 936, 425 P.3d 297 (2018).

Here, BESCO argues the district court erred in interpreting the mandate(s) and asserts an unlimited standard of review applies. Contrary to BESCO's argument, it does not appear the district court erred in interpreting the mandate(s). Rather, the district court clearly explained it was directed by our Supreme Court's mandate in *BESCO III* to follow the mandates of *BESCO I* and *BESCO II*, i.e., to "[apportion] the costs of remediation on the basis of the claims that arose from or were attributable to Walton's and BESCO's respective scope of work based on the indemnity provision under BESCO's subcontract." *BESCO II*, 2015 WL 4879075, at *19. It appears the district court understood the prior mandates required it to "apportion the damages [and attorneys' fees] according to BESCO's actual fault." *BESCO III*, 312 Kan. at 436. Walton is correct the pertinent question on appeal is whether the district court appropriately *implemented* the mandate(s); therefore, we review for an abuse of discretion.

As our Supreme Court explained in *BESCO III*, the district court's third award violated both the letter and the spirit of the mandate in *BESCO II* because it apportioned 50% of the glass remediation and 85% of the metal panel remediation to BESCO, despite the *BESCO II* panel finding a 50/50 split of the costs of both the glass and metal panel remediation was not supported by substantial competent evidence. *BESCO III*, 312 Kan. at 441. Here, the district court's fourth award apportioned less than 50% of the damages for both the glass and metal panel remediation to BESCO. This does not violate the directions contained in any prior appellate mandates. And, based on the district court's explanation of its decision, it does not violate the spirit of the mandates either.

It is noteworthy that although our Supreme Court found the district court's third award violated the mandate of *BESCO II*, the court was generally sympathetic to the

5

second award's 50/50 split of the remediation costs, albeit a proposition foreclosed based on Walton's failure to petition for review of *BESCO II*. Our Supreme Court explained:

"The record includes evidence suggesting the glass and metal panels had to be removed to properly remediate BESCO's defective fastener work. Likewise, the record included evidence that remediation of the water infiltration also required removal of the glass and metal panels. Because both remediation issues (water and fastener) were rectified at the same time and both required removal of the glass and metal panels, a 50/50 split of these remediation costs may have been a reasonable computation of BESCO's responsibility. See *Cerretti v. Flint Hills Rural Elec. Co-op. Ass'n*, 251 Kan. 347, 362, 837 P.2d 330 (1992) ('A reasonable basis for computation and the best evidence obtainable under the circumstances should enable the trier of fact to make an estimate which provides an adequate recovery of damages.')." *BESCO III*, 312 Kan. at 438.

The *BESCO II* panel concluded a 50/50 split was not supported by substantial competent evidence because the remediation work began based on water infiltration issues, which had nothing to do with BESCO's work under the subcontract. 2015 WL 4879075, at *19. However, nothing in *BESCO II* suggested BESCO cannot be held liable for *any* of the costs of removing the glass panels or metal curtain wall. Rather, BESCO could be held liable only to the extent caused in whole or in part by its negligent acts or omissions. In other words, the *BESCO II* panel seemed to imply it was arbitrary to simply split the remediation costs 50/50 on the basis both the water infiltration and fastener issues required removal of the metal curtain wall and glass panels. 2015 WL 4879075, at *18-19.

Here, however, the district court's apportionment of damages was not arbitrary. Contrary to BESCO's arguments, the district court's decision is properly supported by substantial competent evidence. Although BESCO now points to conflicting evidence regarding whether the fasteners could have been corrected from inside the press box without the need to remove the exterior metal paneling and glass, its own actions as a

6

subcontractor on the remediation project belie its present contentions. At the second trial, BESCO admitted it performed the glass removal and never advised the general contractor or KU that doing so was unnecessary to correct either the water infiltration or fastener issues.

BESCO's complaints about the factual basis for the district court's decision are little more than an invitation for us to reweigh the evidence—something we are expressly forbidden from doing in determining whether substantial competent evidence supports the district court's findings. *Granados v. Wilson*, 317 Kan. 34, 41, 54, 523 P.3d 501 (2023). Rather, our only concern is whether the record contains relevant, legally admissible evidence to support the district court's findings, however disputed. *Bell v. Tilton*, 234 Kan. 461, 468, 674 P.2d 468 (1983).

As the district court explained, calculating damages was difficult given the voluminous record from over 20 years of litigation. But the question is not whether the district court's award is supported by a meticulous line-by-line, penny-by-penny accounting of a 20-year-old remediation project. Rather, the relevant inquiry is whether the district court used a reasonable basis for computing Walton's damages based on "'the best evidence obtainable under the circumstances'" in order to make an estimate which provides an adequate recovery of damages. See *BESCO III*, 312 Kan. at 438. We observe the district court did precisely as instructed.

In reaching its decision, the district court properly considered the relevant timeline of events leading to the discovery of the defective fasteners and how the remediation work unfolded thereafter. Although the water infiltration issues were unrelated to BESCO's work under the subcontract, investigating those issues led to the discovery of the defective fasteners. Because the issue with the fasteners presented a serious safety issue, it changed the focus of the remediation plan from fixing just the water infiltration to correcting both issues at once. The evidence in the record supports the district court's

finding that removing the metal curtain wall and the glass panels was necessary to address the water infiltration issues *and* replace the defective fasteners—a point our Supreme Court has already noted. See *BESCO III*, 312 Kan. at 438.

Although the water infiltration issues may have also required removing the metal curtain wall and glass panels irrespective of the defective fasteners, the indemnity provision of the parties' contract does not insulate BESCO from its share of liability. The parties' contract provides:

> "To the fullest extent permitted by law, [BESCO] shall indemnify and hold harmless [Walton] . . . from and against claims, damages, losses and expenses, including but not limited to attorney's fees, *arising out of or resulting from* performance of [BESCO's] Work under this Subcontract, . . . but only to the extent caused in whole or in part by negligent acts or omissions of [BESCO], . . . *regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder*." (Emphases added.)

The district court correctly found the water infiltration issue was the catalyst for the remediation efforts. Because the water infiltration was unrelated to BESCO's work and the issue predated the discovery of the defective fasteners, the district court correctly determined Walton had greater liability than BESCO. However, the remediation plan was changed to address both issues upon discovering the defective fasteners, and the vast majority of the remediation work was carried out after this discovery. Given the same work would have been required to fix both issues, it was not unreasonable to assign 51% of those damages to Walton and the remaining 49% to BESCO. Because both KU and the project's architect had already been determined each to be 10% at fault—an issue not in dispute in this appeal—the district court properly assigned 39.2% of Walton's total damages to BESCO (.49 x 80 = 39.2).

We cannot honor BESCO's request that we vacate the award and order the district court to enter judgment in BESCO's favor because its request is contrary to our Supreme Court's directions in *BESCO III*, 312 Kan. at 443-45. We therefore affirm the district court's award of damages.

*Appellate attorney fees can only be awarded by an appellate court.*

BESCO argues the district court erroneously awarded Walton attorney fees for matters outside of the scope of BESCO's work and/or outside of the district court's authority insofar as some of the award was for appellate attorney fees. However, BESCO acknowledges the district court's fourth award properly excluded attorney fees incurred prior to BESCO becoming involved in the proceedings in June 2004.

We review the district court's award of attorney fees for an abuse of discretion. *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 169, 298 P.3d 1120 (2013). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *In re Spradling*, 315 Kan. at 590. Here, BESCO bears the burden of showing such abuse of discretion. See *Bicknell*, 315 Kan. at 466.

BESCO is correct the district court erred in awarding Walton appellate attorney fees. Walton filed motions for appellate attorney fees in three previous appeals, all of which were denied by this court. See Supreme Court Rule 7.07(b) (2024 Kan. S. Ct. R. at 52). Further, the record reflects no request by Walton for appellate attorney fees on review of *BESCO III* by our Supreme Court.

In *Snider*, our Supreme Court clearly stated: "'Civil appellate attorney fee awards are to be determined by the appellate court hearing the appeal.'" 297 Kan. at 165. Here, the district court erroneously attempted to distinguish *Snider* on the basis the attorney

9

fees at issue in *Snider* were authorized by statute and the case arose from a distinguishable contractual relationship between the parties—an insurer and its insured. However, this is a distinction without a difference as our Supreme Court, in explaining its decision in *Snider*, stated: "Rule 7.07(b) applies to *all requests for attorney fees related to an appeal*, whether authorized under . . . statute, *or by an agreement between the parties*." (Emphases added.) 297 Kan. at 163. The *Snider* court reiterated this point near the conclusion of its analysis, stating: "We reaffirm that if a party would be entitled to appellate attorney fees under a statute *or contract* upon prevailing on appeal, then the party must timely file a Rule 7.07(b) motion in order to preserve the right to those fees." (Emphasis added.) 297 Kan. at 167.

The district court here erred in awarding Walton appellate attorney fees because our court's prior mandates on Walton's Rule 7.07(b) motions for attorney fees were binding on remand. See *Snider*, 297 Kan. at 166 ("[E]ven though the district court would enter the final judgment at the conclusion of further proceedings on remand, the Court of Appeals was authorized to render a decision on the reasonableness of appellate attorney fees and that decision would be controlling in the district court proceedings."). Accordingly, that portion of the award must be vacated.

The remainder of BESCO's arguments are unpersuasive for multiple reasons. As a broader matter, BESCO generally takes issue with the assignment of 39.2% of Walton's attorney fees for the same reasons it believes the district court erred in calculating damages. As previously explained, the district court's determination on this point is properly supported; thus, BESCO's overarching claim of error is unpersuasive.

BESCO next argues the district court erroneously awarded attorney fees incurred by Walton in defending against BESCO's claims to recover retainage withheld. BESCO is generally correct this was an issue on which it prevailed in *BESCO I*, 2009 WL 4639486, at *7-8. However, BESCO fails to cite to the record to show where these expenses were

10

erroneously included in Walton's request for attorney fees. BESCO further complains some of the entries were based on Walton's attempts at collection, which are not subject to reimbursement under the attorney fee provision of the indemnity agreement. Additionally, BESCO asserts Walton's entries were overly generic and vague to the point the district court could not determine whether they were or were not related to matters within the scope of BESCO's work. Finally, BESCO complains the record is lacking in supporting documentation for Walton's billing entries between 2004 and 2008, which had previously been reviewed *in camera* by a different district court judge.

BESCO is correct the record is lacking in documentation, but this point is fatal to BESCO's arguments, not the district court's award. While BESCO complains Walton did not meet its burden to establish its entitlement to attorney fees before the district court, BESCO seems to overlook its own burden as the appellant to show error on appeal. "'[T]he burden is on a party [making a claim] to designate a record sufficient to present its points to the appellate court and to establish its claims.'" *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013). The appellant must support its claims of error with specific citations to the record on appeal keyed to the volume and page number. 296 Kan. at 644; Supreme Court Rule 6.02(a)(4) (2024 Kan. S. Ct. R. at 36). "The court may presume that a factual statement made without a reference to volume and page number has no support in the record on appeal." Rule 6.02(a)(4) (2024 Kan. S. Ct. R. at 36).

Here, BESCO complains Walton's requested attorney fees were improper, yet the record on appeal does not include Walton's most recent motion for attorney fees on remand or the supporting documentation Walton apparently submitted with its motion. The only billing entries in the record are those submitted by KU's counsel in 2006 in relation to Walton's liability for KU's attorney fees under the 2005 settlement agreement. At various points in its brief, BESCO simply cites to various exhibits. However, those exhibits are generally irrelevant to any of Walton's attorney fees after 2006. Further, one

11

exhibit consists of over 150 pages containing dozens of billing entries per page. Simply pointing to a voluminous exhibit in the record with no specific reference to points of error and expecting us to comb through it for evidentiary support does not satisfy BESCO's burden to show error.

BESCO failed to properly designate a sufficient record by not ensuring Walton's motion and supporting documentation were included in the record. BESCO further failed to properly support its claims with proper citation to the record. In fact, BESCO not only failed to properly cite the record in its analysis, it also seemingly forgot to include a proper citation in its statement of facts, stating: "Walton has made nearly identical offer of proof on fees in each round before the District Court. CITE." We find BESCO has fallen short of its burden to properly show where the allegedly erroneous billing entries are contained in the record. BESCO has failed to show how the district court erred in its assessment of Walton's attorney fees.

As previously discussed, the district court appropriately determined BESCO was liable for 39.2% of Walton's damages based on the scope of BESCO's work. We find it was reasonable and logical to assign this same percentage to the award of attorney fees. Here, the ongoing litigation for the majority of the past 20 years was due to BESCO and Walton's dispute under the indemnity provision. See *BESCO III*, 312 Kan. at 434-40. It stands to reason that if BESCO is 39.2% liable for Walton's damages, it is also liable for 39.2% of the costs of litigation to recover those damages. BESCO failed to designate a sufficient record or provide specific citations to billing entries it claims are improper.

The record before us is unclear as to how much of the $220,438.28 award for attorney fees was based on appellate attorney fees versus attorney fees incurred in district court. The appellate attorney fees cannot be included in the total amount awarded. Thus, we vacate the attorney fee award and remand with directions for the district court to enter

12

a new award of attorney fees amounting to 39.2% of the fees incurred by Walton in district court.

*Walton is entitled to attorney fees in this appeal.*

Walton timely filed a motion requesting attorney fees on appeal. BESCO did not respond. Walton requests a total of $32,288.82 for attorney fees incurred from January 17, 2022, to present. We grant Walton's motion; however, we find the appropriate amount to award is $25,249.32. This award represents the amount billed from the time BESCO filed its notice of appeal in March 2023 to present. We do not find it appropriate to award appellate attorney fees during the time in which the matter was still under consideration before the district court. Aside from this, the amount billed was reasonable under Rule 1.5 of the Kansas Rules of Professional Conduct (2024 Kan. S. Ct. R. at 330), and Walton has properly supported its motion with an affidavit from counsel as well as detailed billing entries reflecting counsel's work related to this appeal from March 24, 2023, to present, as required by Supreme Court Rule 7.07(b)(2) (2024 Kan. S. Ct. R. at 52).

Affirmed in part, vacated in part, and remanded with directions.